MONCURE, P.
This is an appeal from a decree of the ^'Hustings Court of the city of Richmond, dissolving an injunction which had been awarded by the judge of said court, to enjoin the sale of certain real estate in the said city, under a deed of trust, upon the ground that there was a cloud over the title, which would prevent a sale of the property at its fair value, until such cloud should be removed. The property had, on the 26th of September, 1865, been sold and conveyed by the ap-pellee Benjamin Davis, to the appellants Eaulkner, Carrington & Russell, at the price of $25,200, of which the sum of $8,400 was paid in cash, and the balance by three negotiable notes, at four, eight and twelve months, with interest aggregated on the several instalments; and, on the same day, a deed of trust had been executed by the purchasers, in the ordinary form, to secure the payment of the deferred instalments as they became payable. Default having been made in the payment of the first deferred instalment, the trustee in the deed of trust Was required by Davis to proceed, in pursuance of its terms, to sell the property thereby conveyed; which sale was about to be made accordingly, when it was injoined as aforesaid. The alleged cloud over the title, on which the claim to an injunction was founded, appears from the bill to be as follows: that the title to the property in question had been derived by the said Davis, under a decree or decrees of the Circuit Court of the said city, in a. suit still pending therein, entitled “Norton’s guardian v. Norton, &c. ;” that the children of Mrs. Norton, who were parties to the suit, took only contingent remainders in the property, dependent on their surviving their mother; and consequently, if any of them should die during her lifetime leaving children, such last mentioned children would take as purchasers under the deed under w'hich she and her children derived their title to the property, and might not be bound by the decrees in the said suit. It is not pretended that there was any fraud or concealment *on the part of Davis in the sale and conveyance made by him. He fully and fairly communicated to his vend-ees all the facts in regard to his title. In his deed to them, the property is described not only by its location and mete and bounds, but also as “being the same real estate conveyed to the said Davis by two deeds, the first from George N. Johnson and Andrew Johnston, Commissioners of the Circuit Court of' Richmond in the case of Norton v. Norton, &c., dated 1st April, 1854, the second from George Gavinzel and wife, bearing date 11th May, 1857, — each of the deeds convey a moiety of the land hereby conveyed; the latter moiety was conveyed to the said Gavinzel by said Andrew Johnston, surviving Commissioner, by deed dated 10th April, 1856 — all of which said deeds are duly recorded in Richmond Hustings Court, to which, as well as the papers in the said case of Norton v. Norton, &c., reference may be had for greater certainty.” It does not appear that said Davis ever had any doubt about his own title, or any cause to doubt it; but, on the contrary, it appears that he had perfect confidence in it. He had acquired title under a decree made by a Judge of great ability, and remarkable, as was said in the argument, for his caution in dealing with the rights of infants and others under disability ; and in a suit conducted by counsel distinguished alike for their integrity and their legal knowledge and experience. He had been in the peaceable, undisturbed and unquestioned possession of the property for ten or twelve years, during which time (besides paying the original purchase money), he had erected the most costly improvements upon it. No person had ever doubted his title, and non-constat that any person having, or who may hereafter have, any claim to the property or an interest therein, ever will. If, under these circumstances, his title can now be impeached by his vendees, and the supposed defect therein be good ground for "’Their withholding payment of the purchase *746 money, it would afford' just cause for reproach to the law or its administration: and the more especially, as all the persons interested in the property and in esse when the decrees were made, were parties to the suit, (which was regularly conducted as to them,) and would be effected in the same way by a sale of the property ,as would be any of their descendants who might after-wards come into being and become interested therein, and whose interest would depend on the remote and multiplied contingencies of their being born, of their surviving both their parents and grandmother, Mrs. Norton, and of their parents dying before Mrs. Norton.
The proper time for a purchaser to en-quire into ■ the title and satisfy himself about it, is while the contract of sale remains executory. A purchaser at a judicial sale, ought to make such enquiry before the confirmation of the sale by the court; and a purchaser at a private sale, ought to make it before he receives possession of the property and a deed from the vendor. In neither case will the purchaser be compelled to accept a bad or doubtful title, unless he has agreed to do so. But having accepted the title, and received the deed, he will generally have to look only to the covenants contained in the deed, for his indemnity and protection against anjr defects which may be in the title. If there be no covenant in the deed covering such defects, he will be without remedy, for he will have no right; unless, indeed, the vendor has been guilty of fraud, or there has been such mistake as to require a court of equity to afford relief. If there be such a covenant in the deed, the .vendee has his remedy thereon at law; and a court of equity will interpose in his behalf to arrest proceedings for the collection of the purchase money, only on the ground that a suit has been brought or is threatened against him on account of such defect, or that such defect *certainly exists, (Ralston, &c., v. Miller, &c., 3 Rand. 44,) or that some other peculiar equity ex-, ists in the case. If there be a defect in the title known to the vendee at the time of the sale, it is at least questionable whether he would be entitled to any relief-on account of it, either at law' or in equity, even though it might seem to be covered by the covenants of the xdeed. A vendor of a horse with warranty of soundness, is. generally not bound to make good a visible defect, such as the loss of an eye, the loss of which is plainly visible. The covenant of warranty is construed not to extend to such a defect, as that could not have been the intention of the parties. The same principle would seem to apply to a sale of real estate. To be sure, a purchaser might be informed of a fact which constituted a defect of title, and still not know that it did, nor intend to accept the title subject to such a defect. Or, knowing that it was a defect, he might be willing to purchase the property with a covenant of general warranty to protect him in case of eviction. In either of these cases the covenant would cover the defect; but in the latter case, generally, the only remedy of the purchaser would be at law, after eviction, and he would have no right, in the absence of fraud or mistake, to withhold the payment of the purchase money, which, by the very terms of the contract, he bound himself to pay, notwithstanding the defect. The complainants in this case, at the time of their purchase, had, as before stated, full knowledge of the fact which is supposed to constitute the alleged defect of title; but they did not believe that it was such a defect. They say in their bill, that “having been informed at the time of their purchase, that the title of the property in question had been derived to the said Benjamin 'Davis under a decree or decrees of the Circuit Court of the city of Richmond, in a suit still pending therein, entitled ‘Norton’s guardian v. Norton, &c.,’ and that the possession *for ten or twelve years under the title so acquired had not been disputed by any one, they felt no apprehension on the score of the title, nor any doubt but that it would be approved upon examination.” Therefore, if there be such a defect of title as is now alleged, it cannot be considered as having been waived by the purchasers, but is embraced by the covenants contained in the deed, which are broad enough to cover it.
The purchasers claim to be entitled to relief in this case by injunction, not to a suit at law for the recovery of the purchase money or a part thereof, but to a sale of the property under the deed of trust, and that, upon the ground that there is a cloud over the title arising from the alleged defect therein, which would occasion a sacrifice at such a sale. And the authorities on which they rely in support of this claim, are Lane v. Tidball, Gilm. 130; Gay v. Hancock, &c., 1 Rand. 72; and Miller v. Argyle’s ex’or, 5 Leigh 460. These authorities seem fully to sustain the claim, if there be such a defect of title; and the vital question in this case, therefore, is, Does the alleged defect exist?
Whether there be such a defect or not, depends upon two questions: 1st. Whether the court under whose decree the sale was made under which the title was acquired by Davis, had jurisdiction of the subject matter; and 2dly. Whether the suit in which the decree was rendered was defective for the want of proper parties. And these questions I will now proceed to consider in their order.
■First. Had the court jurisdiction of the subject matter? Was it competent for a court of equity to make such a decree, supposing that it had all proper parties before it?
There are two general grounds of equity jurisdiction, on either of which, it is contended by the counsel for the appellee Davis, that it was competent for the court to make such a decree. One of them is, that the property, or ^rather some *747 interest therein, belonged to infants; and the other is, that it was a trust subject.
As to the ground that the property, or some interest therein, belonged to infants: It has been supposed and contended by some, and even decided by courts, that a court of chancery is the general guardian of infants within its jurisdiction, and has an inherent power to decree a sale of their real estate whenever it is for their advantage to do so. Some of the earlier English cases seem to tend that way. But the more recent cases, commencing with a decision of Lord Hard-wicke, have tended the other way, and held that an infant’s inheritance is never bound by the act of the court. Taylor v. Phillips, 2 Ves. R. 23; Simpson v. Jones, 2 R. & M. R. 36S; Calvert v. Godfrey, 6 Beav. R. 97. In the last case a purchaser of an infant’s estate under a decree of the court was discharged from his purchase on the ground that the court had no jurisdiction to sell or convert an infant’s real estate, upon the notion that it would be beneficial. See also 1 Spence’s Equity 613, and cases cited in a note. In the States of this Union the decisions of the courts on this question have been conflicting. The jurisdiction was upheld in the following, and perhaps some other cases: Matter of Salisbury, 3 John. Ch. R. 347; Huger v. Huger, 3 Des. R. 18; Stapleton v. Langstaff, Id. 22; Williams v. Harrington, 11 Ired. 616; and Ex parte Jewett, 16 Alab. R. 409; while it was denied in the following, and some other cases: Rogers v. Dill, 6 Hill’s R. 415; Baker v. Lorillard, 4 Comst. R. 257; and Williams’ case, 3 Bland Ch. R. 186. In this State there has been, I believe, no express adjudication of the question. President Tucker pronounced a very decided opinion against such jurisdiction in the case of Pierce v. Trigg, 10 Leigh 406; and though what he said on that subject was only an obiter *dictum, yet it has been generally regarded and acted upon as a sound exposition of the law. Beyond all question, it is the law of England; but whether it be law in this country or not, regarding the question as a new one, would seem to depend, in a great measure? on the different state of things which exists here in regard to real estate, from that which exists in England, and the effect which that difference ought to have in producing a corresponding modification of the English law; upon the principle which has been often recognized, and in Ex parte Jewett, supra, was recognized by the Supreme Court of Alabama in regard to this very question, that the common law moulds and adjusts itself so as to suit the successive changes which occur in the condition of things to which it is, in different places and at different times, applied. I think, hov/ever, that the question ought now to be considered as settled in this State, and in accordance with the views of President Tucker; especially as that seems also to have been the view on which the Legislature of the State has always acted, first in passing special acts for the sale of real estate of' infants, as was formerly the case, and then in passing general acts on the subject, and extending them from time to time, as necessity or convenience seemed to require. It is under these general acts, or one or more of them, therefore, that the jurisdiction of a court of equity to sell the real estate of infants, on the ground of infancy merely, must be derived. I will briefly review these statutes.
The first of them is to be found in 1 R. C. 1819, pp. 409, 410, ch. 108, 16-23, being a portion of the general act concerning guardians, &c., passed Eebruary 18, 1819. The provisions of that statute are familiar to us all, as all of us have often, no doubt, proceeded under it to obtain a decree, at the suit of a guardian for the sale of the real estate of his ward. It is confined in its terms to a *case in which the real estate sought to be sold belongs to the infant only, and in which no other person has any interest in it, present or future, vested or contingent.
The next statute on the subject is the act passed March 3d, 1827, Sup. R. C. p. 134, ch. 104, which declares that the sixteenth section of the act of 1819 before referred to, “shall be held and construed to extend as well to cases where more than one infant shall be interested in the land sought to be sold, as where any one or more of those interested shall be of full age. The meaning of this act is sufficiently apparent, and it seems, by its terms, to be confined to a case in which the real estate sought to be sold belongs to the infant parties and to the other parties directed to be convened before the court by summons or by publication, and in which the interest of the parties respectively is vested and not contingent.
The next statute which will be noticed, although it does not directly belong to the branch of the subject I am now considering, but is indirectly connected therewith, and was afterwards consolidated with those before mentioned, is the act authorizing the sale of trust estates in certain cases, passed January 20th, 1832, Sup. R. C. 208, ch. ISO. The provisions of this act are also sufficiently familiar to us all, and need not be further noticed, at least for the present.
In the Code of 1849, the statutes aforesaid (with some others which had been passed having some connection with the subject, but not noticed in the foregoing review because not material to the present enquiry), are condensed, and form title 36, chapter 128, of that Code, the subject of it being, “lands of persons under disability. ”
The next statute in order is the act of Eebruary 18, 1853, concerning the sale of estates belonging to infants or insane persons, or held for cestuis que trust. Acts of 1852-3, p. 49, ch. 30. This act is merely an amendment, *'though it may be a very material amendment, of sections 2, 5 and 7 of chapter 128 of the Code just referred to. The amendment of the second section inserts therein these words, as descriptive of the estate for the sale of *748 which ■ a bill is thereby authorized to be filed: ‘ ‘Whether the estate of the minor or insane person, or of any of the persons interested, be absolute or limited, and whether there be or be not limited thereon any other estate vested or contingent, and whether the guardian, committee or trustee, or the minor, insane person or any of the persons interested, reside in this State or not.” 'The amendment of the fifth section need not be noticed. The only amendment of the seventh section seems to be an addition at the end of it in these words: “And for the protection of the rights of all persons interested therein, whether such rights be vested or contingent;” which was made in consequence of the amendment of the second section. The amendments made by this act are embodied in chapter 128 of the Code of 1860.
The next statute in order, and the last on the subject, is the act of March IS, 1858, entitled “An act to authorize the sale of estates subject to a limitation contingent upon the dying of any person without heir or heirs of the body, or children or offspring or descendant or other relative”— Acts of 1857-*8, p. 46, ch. 46. The first section of that act declares, “that when any estate, real or personal, is given by deed or will to any person, subject to a limitation contingent upon the dying of any person without heir or heirs of the body, or issue of the body, or children or offspring or descendant or other relative, it shall be lawful for the Circuit Courts, upon a bill filed by the person holding the estate subject to such limitation, in which bill all persons then living and contingently interested shall be made defendants, to decree a sale . of such estate, real or personal, and to invest the proceeds of sale, *under the decree of the court, for the use and benefit of the person so holding the estate, subject to the limitations of the deed or will creating the estate: provided, however, that the bill of the plaintiff shall set forth the facts which, in his opinion, would justify the sale of the said estate; to be verified by the affidavit of the party.” The second, third and fourth sections prescribe rules and modes of proceeding similar to those prescribed in regard to the sale of infants’ and trust estates. The fifth section is in these words: “The decree rendered in such suit shall be as binding upon all persons who may be born thereafter and become interested in the said estate, in like manner and to the like extent as it is upon the parties to the said .suit. ” This last act is embodied in chapter 116 of the Code of 1860, concerning the creation and limitation of estates, and their qualities, and forms the twentieth, twenty-first, twenty-second, twenty-third, and twentjr-fourth sections of that chapter, p. 561.
These are all the acts which seem to have any material relation to the subject; and the question is, whether, under them or any of them, when the decree was rendered under which the sale was made to Davis, the court had jurisdiction of the subject matter upon the ground merely that infants had an interest in the property.
The last act, that of March 15, 1858, may be passed by, for the present at least, with only a few observations. It was passed long after the sale to Davis, and therefore cannot, directly, apply to the case, though it may be useful for the purpose of illustration. And then, too, it is not confined to infants, nor indeed does it mention infants, or refer to infancy at all, at least by name, but expressly applies to any estate, real or personal, given by deed or will to any person, though not under disability, or whether under disability or not, subject to a limitation contingent upon the dying of any person without heirs, &c. It certainly *provided for cases which, or, at least, some of which, had been provided for by no former statute: that is, cases in which there might be no living person under any disability having any interest in the estate. It does not refer to trust estates, but applies, if it is not confined, to any legal “estate, real or personal, given by deed or will to any person, subject to a limitation contingent, &c. and authorizes a decree for the sale of the estate to be made, “which shall be as binding upon all persons who may be born thereafter and become interested in the said estate, in like manner and to the like extent, as it is upon the parties to the said suit.”
Then in regard to the prior statutes, how does the matter stand?
The learned counsel for the appellants argued this case as if the court, in ‘ ‘Norton v. Norton, &c., had decreed the sale of mere possibilities, the contingent right of the children of Mrs. Norton to the property in the event of their surviving her. If that had been the only right proposed to be sold, no court, whatever might have been its jurisdiction, would, in the exercise of its judicial discretion, have decreed the sale. We can hardly suppose a case in which it would appear with sufficient certainty to justify such a 'decree, that the interest of infants would be promoted by a sale, and no court would involve their rights in such a gambling speculation. The decree was for the sale of the property out and out, just as if it had been the absolute estate in fee simple of an individual owner. The only effect of the decree was to convert the real estate into money, and to leave that money, or .the property in which it might be invested, in the place of the real estate sold, subject precisely to the same rights and interests, present or future, vested or contingent, to which that estate was subject at the time of the sale.
The statutes referred to, and especially the early ones, *seem literally to apply only to real estate belonging absolutely, in whole or in part, to one or more infants; and the counsel for the appellants argued for such a literal construction, and that in construing statutes giving a special jurisdiction, we ought to construe them strictly. These statutes are eminently remedial, and were dictated by a *749 policy which seems rather to require that they should receive a liberal construction, so as to advance the remedy and promote the policy of the legislature. We can readily see how, the interest of an infant would be promoted by a sale of real estate, in which he has only a contingent interest, as well and as much as by a sale of real estate belonging to him absolutely. And there would seem to be the same reason for giving a court of chancery the power to decree a sale in either case. Both cases, then, come within the reason and the policy •of the law, and the only question is, whether the letter of the law should be construed so strictly as to shut out one of these cases.
This court has indicated a decided disposition to adopt the liberal rather than the strict rule of construction. In a very early case, which occurred shortly after the first of these statutes, to-wit: the case of Garland &c. v. Loving &c., 1 Eand. 396, James Loving, by deed dated the 24th of August, 1819, conveyed a tract of land to Lunsford and Samuel Loving, in trust for the support of himself and wife, for the schooling and raising of his children, and after his death, for his children in fee; and by another. deed dated the 25th of October, in the same year, he conveyed other ¿property to the same trustees, on nearly the same trusts. Shortly thereafter the said James Loving and the two trustees contracted to sell the said tract of land to Nathan Lofftus for $10,000; and Garland and Whitehead, guardians of the infant children of James Loving,
united with Samuel and Lunsford Loving, the ^trustees, in a bill against James Loving, his wife and the said infant children, and Lolft.us, &c., the object of which bill was to obtain a confirmation of the sale, or a resale of the land, upon the ground that it would manifestly be for the benefit of the infants. The suit was conducted according to the directions of the statute in 1 E. C. 1819, p. 409, under which it was brought. The chancellor dismissed the bill for several reasons, which he assigned, one of which was, “because the infants had nothing but an equitable interest in the subject which would not accrue to them till after the death of their father. ’ ’ This court reversed the decree of the chancellor, being of opinion that the case was a proper one ‘ ‘for the consideration of the Superior Court of Chancery, under that part of the act of Assembly concerning guardians, orphans, &c., which prescribes the mode by which a guardian may procure a sale of the real estate of his ward.” And the court was further of opinion that if, under all the circumstances which were referred to in the opinion, a sale manifestly to the interest of the infants could be made, it would be proper to decree the same, taking care that the proceeds thereof should be properly invested and secured for the use of the cestui que trusts, according to their rights as they then appeared or might thereafter appear, or the rights of any future cestui que trust (after born children of James Loving) who might be entitled under the deed aforesaid; and that it would be competent for the chancellor, instead of directing a resale, to confirm that already made to Lofftus, under the terms and conditions aforesaid,(provided he was willing to abide thereby, and James Loving and wife were also willing to unite in the conveyance, and to invest and secure the proceeds thereof as aforesaid, in the same manner as if such sale had originally been made in pursuance of a decree of the court. Now such was the liberal construction put by this court upon the statutory *power of the court of chancery to decree a sale of real estate in which infants are interested, when that power existed in its simplest form. And the power was held to be applicable to a case in which the interests of the infants was joint and not several, future and not present, and was liable to be reduced by the subsequent birth of other children, who would become entitled to an interest in the property. That case alone goes very far to sustain, if it does not fully sustain, the power of the court in the case we are now considering, without reference, for the present, to the question of parties, which we will consider by and by, and when we come to consider which we will have occasion to notice further the case of Garland v. Loving. And that effect is greatly augmented by the subsequent statutes before referred to, passed after that case occurred and before the sale was made in Norton v. Norton.
In Cooper v. Hepburn, &c., 15 Gratt. 551, a guardian of his infant children filed a bill for the sale of the real estate held by himself for life and by his infant children in remainder; and it was sold accordingly. This was held by this court to be authorized by the statute. “The language of the law,” said Judge Daniel, in whose opinion the other Judges concurred, “as it stood, whether at the date of the original decree, or at the date of the order of June, 1852, directing the Commissioner to execute the original decree, is, I think, sufficiently broad to cover the case. The term ‘real estate’ applies as well to life estates or estates in remainder, as to absolute or entire fees. ” “It is not difficult to conceive of numerous instances,” he further said, “in which the want of a power in the courts to sell the remainder of a ward, would occasion’the most serious injury to his future interests. The call for a sale of the real estate of an infant, looking to his interest alone, may be just as obvious and urgent in the case where he is the owner of a portion, as where he is the owner of *the whole of the fee; and no good reason is perceived why language broad enough to cover both cases should be construed to have conferred the power to sell in the one case, and to have withheld it in the other.” It will be observed in regard to this case, as in regard to the case of Garland v. Loving, that the interest of the infant wards was liable to be reduced by the birth of after born children, and yet it was held that the *750 court had a power to decree a sale of the entire estate.
In Talley, &c., v. Starke’s adm’x, &c., 6 Gratt. 339, a testator directed his estate, after payment of his debts, to be kept together until his youngest child should come of age, to be controlled and managed by his executor and his wife with their best discretion, so as to make it productive of the greatest amount of profits for the support of his wife and children. It was held that a court of equity might direct a sale of the real estate under the statutes, 1 Rev. Co. 409, 410, &c., if it was for the benefit of the infant children, and those who were of age consented. Indeed, no question was raised in that case as to the nature of the interest of the infants in the real estate decreed Ro be sold; that interest being an uncertain present interest in the profits, and uncertain future interest in the estate itself, that is, uncertain as to its proportion ; but the question was, whether the direction of the testator that his estate should be kept together, amounted to an absolute prohibition of a sale thereof in the meantime, which would have made it incompetent for the court to decree such a sale. But the court, construing the statutes according to their obvious meaning and policy, held that there was nothing in the will which could prevent the exercise of the power.
My attention has been called by my brother Joynes to a recent case in Kentucky involving the construction of a similar statute to those we are now considering, which has an important bearing upon this case. I mean Rutter &c. v. *Russell, &c., 3 Mete. R. 163, decided by the Court of Appeals of that State in 1860; in which it was held that the words “real estate,” as used in the first section of article 3, chapter 86, of the Revised Statutes of that State, relating to the sale of the estate of infants on a petition to the Circuit Court, import lands, tenements and heredita-ments, and all rights thereto and interests therein, other than a chattel interest, and that &, contingent remainder, or an interest in the nature of an executory devise, may be sold under the statute. The words of the section above referred to are: “The real estate of an infant, idiot, or lunatic, held by descent, devise, or by contract, whether in possession, reversion, or remainder, may, on a petition to the Circuit Court of the county 'in which the same, or the greater part thereof, lies, be decreed to be sold.” 2 Rev. Stat., Stanton’s ed. p. 304, ch. 86, art. 3, §1. “ All difficulty, ” said the court, “with respect to the import of the words ‘real estate,’ as here used, is removed by another " provision of the Revised Statutes, which declare that the words ‘real estate,’ or ‘land,’ in the statute law, shall be construed to mean lands, tenements and here-ditaments, and all rights thereto and interests therein, other than a chattel interest. ” 1 Id. p. 261, 113. There isa similar provision in our Code, p. 115, ch. 16 ? 17, rule 10th. “The clause of the will,” continued the court, “gives to each of the dev-isees a future interest in the lands devised to the others, contingent on the happening of the event mentioned. This interest may, perhaps, be more properly and technically denominated an executory devise, and not a contingent remainder. The distinction, however is immaterial. It is unquestionably an interest in the land, and is, therefore, comprehended within the statutory definition of the words real estate, although it be not, strictly speaking, an estate‘in possession, reversion, or remainder. ’ These latter expressions *cannot be construed as limiting or restricting the power of the Chancellor to the sale of such interests only as fall technically within one or the other of these three classes of estates or interests. The evident intention of the legislature was to subject to the jurisdiction of the Chancellor any interest of an infant in real estate, whatever might be the character of that interest,” &c. “No reason of policy can be suggested for excluding from the operation of the statute an interest in the nature of an executory devise, that would not apply with equal propriety to an interest in remainder, whether vested or contingent; and it cannot be denied that a contingent remainder is embraced by the terms of the statute as they have been expounded.” The court then, after commenting on the case of Jackson v. Waldron, 13 Wend. R. 178, which had been cited to show that such an interest as the court had been considering was a naked possibility, as it is called, and not assignable or releasable, said it was unnecessary to decide that point upon general principles; “for, according to our own statutes,” as the court proceeded to say, ‘1 any interest in or claim to real estate may be disposed of by deed or will in .writing. Any estate may be made to commence in futuro, by deed in like manner as by will, and any estate which would be good as an executory devise or bequest, shall be good if created by deed. ' 2 Rev. Stat., $ 6, p. 226.” We have a provision precisely like this in the Code, p. 559, ch. 116, {] 5. “The effect of this enactment, ” said the court, “is to obviate at once all the difficulties, growing out of the distinctions which had been established by judicial construction between such estates as were -alienable and such as were not. It will not be doubted, we suppose, that under this statute, every conceivable interest in, or claim to real estate, whether present or future, vested or contingent, and however acquired, may be disposed of by deed or will. Why, then, may not the Chancellor decree *a sale of any interest owned by an infant in real estate, which might be disposed of by an adult owner? and is it not manifest that the law which clothes the Chancellor with this power was intended to embrace every such interest?” “Cases such as the one now under consideration may very often arise, in which the sale of a future and contingent estate will as certainly and as effectually redound to the interest of the infant owner, as the sale of any other *751 estate.” The purchasers in that case, which was a proceeding- under the Revised, Statutes aforesaid for the sale of real estate of infants, sought to get rid of their purchases upon the ground,' that the Circuit Court had no power to order a sale of the contingent interest of the infants in the lands sold. That court, upon final hearing, overruled the objection, and confirmed the sale ; and the Court of Appeals affirmed the decree. Of course the sale in that case was, of the entire and absolute estate, and not of the contingent interests merely. The proceeds of sale and the subject in which they might be invested, were to stand in the place of the estate sold, and be subject to the same uses and limitations.
The decisions I have referred to seem to leave no room for doubt that a court of equity had jurisdiction under the statutes before referred to, to decree a sale of the property in question, on the ground that infants were interested therein — provided there be no insuperable difficulty in regard to parties — a branch of the subject which will be considered presently.
I will now proceed to consider the other ground of equitable jurisdiction on which it is contended that it was competent for the court in Norton v. Norton, &c., to decree a sale of the property in question; and that is, that it was part of a trust subject. The trust having been created by a deed bearing date the 18th of June, 1840, between Ducy Nelson Call, widow of Daniel Call, and Ann Cameron, *his only child and residuary devisee of the first part, P. S. Ambler and Wm. M. Ambler of the second part, and Daniel N. Norton and Ducy M., his wife, of the third part, whereby the parties of the first part, in consideration of five dollars paid by the parties of the second part, and ‘‘of the love and affection which she the said Ducy Nelson” bore ‘‘to the said Daniel N. Norton and Ducy M., his wife,” conveyed to the said Amblers and the survivor of them and the heirs of such survivor, two certain lots of ground in the city of Richmond, particularly described in the said deed; but upon this special trust and confidence that the said P. S. Ambler and W. M. Ambler, and the survivor of them, shall permit the said Daniel N. Norton and Ducy M., his wife, and the survivor, to hold, use, and enjoy the said lots of ground, without claim or charge, during their joint lives and the life of the survivor of them, (if the same be not sold as hereinafter provided for,) and at the death of the said D. N. Norton and Ducy M., his wife, the said Amblers shall hold the said lots and their appurtenances to and for the use and benefit and as the property of the child or children of the said Ducy M. by her husband, the said Daniel N., who may be living at the death of the said Ducy M., and the child or children then living of any child or children of the said Ducy M. by the said Daniel N. who may have died in the lifetime of the said Ducy M. ; and shall so convey the lots, &c., to the child or children and grandchild or grandchildren of the said Imcy M. and Daniel N. when required after the death of the said Daniel N. and Ducy M. ; and upon this further trust that if, in the opinion of the said Daniel N., it shall become expedient to sell the lots, &c., or any portion of them or either of them, the said Amblers and the survivor of them shall permit him, the said Norton, to do so, the purchase money for the same being adequately and legally secured to the uses and trusts ^before described, the interest annually arising therefrom to be paid to the said Daniel N. during his life, and to the said Ducy M. after his death, if she shall survive him, during her life, and the principal and all interest thereon, accruing after the death of the said Daniel N. and Ducy M., to be held by the said Amblers and the survivor of them as the lots would have been if not sold. And then follow the usual covenants by the trustees for the execution of the trusts, though the deed was not signed by them, but onl3r by the parties of the first part.
In regard to the power of a court of chancery to decree a sale of the property in question on the ground that it was a trust subject, it is contended by the counsel for the appellee, Davis, that such a power existed either under the jurisdiction which that court has over the subject of trusts and trust estates generally, or under the peculiar provisions of the deed which created the trust subject in this case, or under the statutes in regard to the sale of trust estates.
That the property at the time it was decreed to be sold in Norton v. Norton, &c., was a trust estate in the meaning of the law which gives to the court of chancery jurisdiction in regard to trusts, and also in the meaning of the statutes which give to that court power to decree the sale of an estate in trust when the interest of the beneficiaries in the trust will be promoted by such a sale, I think there can be no good ground to doubt; and I need not, therefore, notice the difference between the English statute of uses and ours. Under either, X think, the estate created by the deed of the 18th of June, 1840, before mentioned, would clearly be considered as a trust estate, unaffected by the statutes of uses, at least during the life of Mrs. Norton.
That trust estates, and especially those in which infants are interested, are peculiarly within the cognizance, and *under the control of a court of chancery, there can be no doubt. Whether that court, in the exercise of its general jurisdiction, has power to decree a sale of real estate which is held in trust for the benefit of infants or others under disability, merely upon the ground that the interest of the beneficiaries would be promoted by a sale, is a-question which need not be considered in this case, if there be anything in the deed creating the trust, or any statute law which confers the power upon such court. I will, therefore, proceed to consider those questions ; and
First, Does the deed confer the power?' *752 The grantors in that deed could hardly have supposed tthat the interest of the beneficiaries in the deed probably would not require a sale of the trust subject and reinvestment of the proceeds before the time would arrive for the division of the subject among the children and grandchildren to whom it was contingently limited in remainder. The property consisted of vacant lots, eligibly situated, in the heart of an improving city. Their chief value consisted in their being speedily improved and built upon, and that was impossible while they were held in trust. So long as they remained as they were, they would be comparatively unproductive, both to the tenants for life and the contingent remaindermen. By selling them at a good price, which their location and the existing state of improvements around them would then command, a fund might be raised which would afford the means of support to the life tenants and of support and education for their children. By withholding the power to make a sale until after the death of the life tenants, not only would the property be rendered unprofitable during that period, but the tide of improvement might turn in another direction, and the property be thus rendered less salable. At all events it was obviously important that the trustees, a court of chancery if necessary, should be entrusted with the power to make a sale and *conversion, if, and whenever, in the exercise of a sound discretion, it might seem proper to do so. Now let us look at the deed and see if it does not confer such a power, either expressly or by strong implication. We find that it does expressly confer such a power on one of the life tenants. " And upon this further trust that if, in the opinion of the said Daniel N. Norton, it shall become expedient to sell the lots,” &c., or any portion of them or either of them, the trustees and the survivor of them "shall permit him, the said Norton, to do so,” the purchase money to be secured and applied to the uses and trusts declared by the deed. Now it would be strange' if the grantors in the deed only intended to give a power of sale to Dr. Norton, to be exercised if, in his opinion, it should become expedient, and of course to be confined to the period of his life, which might terminate at any time, and did actually terminate a year or two thereafter — his wife, the said Ivucy M., the other life tenant, having already survived him more than twenty-five years. The grantors knew that this event might take place, and they could not have intended that in such event no power of sale should anywhere exist, however expedient it might in fact become to make such a sale. They must, therefore, have refrained from expressly conferring a power of sale on the trustees simply because they supposed the trustees would have such power as incident to their office and estate as trustees. And this seems probable from the form of their expression, that if it .should become expedient, in the opinion of Dr. Norton, to make a sale, the trustees should permit him to do so. Thus the power is not directly given to Dr. Norton by the framers of the trust, but the trustees are authorized in a certain contingency to impart to him a portion of the general power with which, as it seems, they were supposed to be invested. The grantors, in that view, gave a power of sale to the ^trustees by implication. But, at all events, the power conferred on Dr. Norton was trust power, to be exercised for the benefit, not only of himself, but of all others who were interested in the trusts of the deed; that is, of his wife, children and grandchildren. Will a court of chancery suffer this most necessary power to die, merely because Dr. Norton has died? and died, too, almost as soon as the power was given; although the necessity for it might long survive, and has already survived more than a quarter of a century? Is it not a settled rule of that court, that a trust shall never fail for the want of a trustee? But it is said that this power was discretionary in Dr. Norton, and now that he is gone, cannot be exercised. Is not that too strict and literal a view, and does it not sacrifice substance to form? The trust is, that the property shall be sold, if it shall become expedient. Now it is true that the framers of the trust referred the question of expediency to the opinion of Dr. Norton; and so long as he lived, he was a safe depository of such a trust. But that was a mere means of accomplishing an end; and a court of chancery will not permit the end to be lost because the means marked out have been lost, but will, devise other means to accomplish the end. The fact to be ascertained in order to exercise the power is, that it is expedient to make a sale. And that fact the court of chancery is as competent to ascertain as was Dr. Norton. There are many cases in which discretionary powers are also trust powers, which can and will be enforced by a court of chancery. And although that court will never interfere with the exercise of a discretion which has been conferred by the author of a trust so long as it is fairly exercised, yet there are many cases in which the court will prevent its improper exercise, and will itself exercise it when the person on whom it is conferred refuses to do so, or is prevented by death or otherwise from doing so. The *case in which a husband by his will gives property to his wife during her life in trust for the support of herself and her children, according to her discretion, is a familiar case of this kind. The case of Hewett v. Hewett, 2 Hden’s Ch. R. 332, decided by Bord Chancellor Northington in 1765, which was cited and much relied on by the counsel for the appellee Davis, is also a case of this kind, and a very important and interesting case it certainly is. It was decided by a very great Judge, after full argument and long deliberation; the case having been held under advisement for two years, because, as the Bord Chancellor observed after its argument, ‘ ‘it was *753 a new case, and might be of great importance to the parties, and might be a leading case;” as it certainly is. According to the marginal abstract of the reporter, the case was this: ‘‘Power contained in a will for the devisees for life, when in possession, to cut down timber, as four trustees or the survivors or survivor of them should assign, allow of or direct, all the four trustees being dead: Held, that the court would execute the trust by referring it to a master to see what timber was fit to be cut down from time to time. ’ ’ The counsel for the defendants argued, that “the power given to the trustees is a naked power, which if it cannot exactly be complied with, is at an end. The books are full of instances of this nature ’ and they proceeded to cite many. But the court, as before stated, decided otherwise. I, therefore, think that the deed in this case created a trust power of sale, which it was competent for the court of chancery, after the death of Dr. Norton, to execute, and that the court had jurisdiction on that ground to make the decree which was made in the case of “Norton v. Norton” for the sale of the property in question.”
Secondly. Had the court jurisdiction to make such a decree under the statutes in regard to the sale of trust estates? The statute on this subject which was in force *when the original decree was made in “Norton v. Norton, &c.,” was the act of January 20th, 1832, entitled “an act authorizing the sale of trust estates in certain cases,” Sup. R. C. p. 208, ch. ISO, before referred to. That statute enacts “that where any person or persons for whose benefit any estate is held in trust, or the trustees holding any estate for the use of others, shall think that his or her interest, or the interest of those for whose use the estate is held, will be promoted by a sale of the estate or any part thereof, it shall be lawful,” &c. There is not a word in that statute which is not appropriate to this case, which is also plainly within its spirit and policy. Why, then, does it not apply to the case? In my opinion, it clearly does, and under it the court had jurisdiction to decree the sale in question. The Code of 1849, ch. 128, $ 2, makes no material change of the law in this respect. The act of February 18, 1853, Sess. Acts 1852-3, p. 49, ch. 30, which also applies to this case, having been enacted before the sale to Davis was made, seems to put the question completely at rest, if there could have been any room for doubt before. That' act is amendatory of the 128th chapter of the Code, and applies as well to trust estates as to the estates of infants and insane persons. It amends the 2d section of that chapter by inserting therein the words, “whether the estate of the minor or Insane person, or of any of the persons interested, be absolute or limited, and whether there be or be not limited thereon any other estate, vested or contingent, and whether the guardian, committee or trustee, ■or the minor, insane person, or any of the persons interested, reside 'in this State or not.” Now in this case, Mrs. Norton was one of the persons interested in the trust estate. Her interest therein was a limited estate, and there was limited thereon a contingent estate to the child or children of herself by Dr. Norton who might be in being at her death, and the child or children *then living of any child or children, &c., who may have died in her lifetime. This case, therefore, comes within the express terms of the last mentioned act; as the third section of the act amendatory of $ 7 of ch. 128 of the Code, further shows.
I am of opinion, therefore, that on the several grounds aforesaid, a court of chancery had jurisdiction to make the decree which was made in Norton v. Norton, &c., for the sale of the land in question, unless there was an insuperable difficulty in the way in regard to parties. If such jurisdiction existed on any one or more, though not on all, of those grounds, that is enough for the purposes of this case. Although, for reasons apparent on the face of the bill, it was originally framed with special reference to the statutes in regard to the sale of real estate belonging to infants, or in which they are interested, the requisitions of which statutes were strictly complied with, yet as all the facts of the case are fully set out in the bill, and all the proceedings in the suit were regularly and legally conducted, it was competent for the court to make a decree therein for the sale of the property in question, if upon those facts, on any ground whatever, a court of chancery had jurisdiction to make such a decree. The trustees, though not made parties to the original bill, for reasons therein stated, were yet made parties by an amended bill before the sale to Davis was confirmed.
Then the only remaining question to be considered and disposed of is, whether the suit was defective for want of necessary parties? If it was, of course the title acquired by Davis, by his purchase under the decree made in that suit, was also defective.
All the persons interested under the deed of trust of the 18th day of June, 1840, aforesaid, who were in being — the widow of Dr. Norton, and their five children, and the trustees — were parties to the suit; and the only alleged ^defect consists in this, that by the terms of the deed, the trust subject, at the death of Mrs. Norton, is to be held by the trustees for the use, and as the property of, the child or children of Mrs. Norton by Dr. Norton who may be then living, and the child or children then living of any child or children of the said Norton and wife who may have died in her lifetime; so that, as is contended by the counsel of the appellants, the grandchildren of said Norton and wife, who may thus become interested in the trust subject, not being parties to the suit, they will not be bound by the decrees made therein, and therefore, to the extent of their contingent possible interests, at least, the title of Davis is defective.
*754 The answer made to this objection by the counsel of Davis is, that although those unborn grandchildren were, of course, not personally parties to the suit, because it was impossible to make them such parties, yet they were parties to the suit by representation, and will be as effectually bound by the decrees made therein, as if they had been in being and made personally parties to the suit. It is contended that they were represented by their mother and their parents, if not by the trustees also.
It is certainly a general rule in regard to suits .in equity, that “all persons having an interest in the object of the suit, ought to be made parties.” Calvert on Parties to Suits in Equity, p. 11. “It is a rule,” says that author, “founded upon the advantage which all persons interested will derive from the completeness of the decree, and from the entire settlement of a matter in litigation; in other words, it is founded upon convenience, and the same principle guides our courts of equity in their mode of putting the rule into operation, as they never allow it to produce any inconvenience which can safely be avoided. With this view, they have adopted the principle of representation.” Id., p. 19. The author then proceeds to examine “'the doctrine of representation, in the course of which examination he refers to that representative character which 'is derived from the law, as in the case of executors and administrators, of assignees of bankrupts and insolvents, of corporations; Id. 20; or which arises where suits may be brought by or against certain persons on behalf, or on account of themselves and others having a community or similarity of interest. Id. 28. He then says: 1 ‘Another kind of representation admitted in the practice of courts of equity, is the representation of all persons having interest in real property, subsequent to the first estate of inheritance, and liable to be defeated by a recovery. This representation takes place in the person entitled to the first estate of inheritance. The rule is firmly established, and the principle and extent of it may be extracted from the following dicta”- — which he proceeds to quote from what Lord Eldon says, in Lloyd v. Johnes, 9 Ves. R. 37, and Lord Northington says in Pelham v. Gregory, 1 Eden. R. 520; and then says: “Erom these passages, it appears that the modification of the general rule has .been adopted on grounds partly of necessity, partly of convenience, and upon a principle of justice to persons entitled to remote interests, that they may not be exposed to any vexations which the caprice or self-interest of those who actually enjoy or wish to claim a property might chance to produce. Another important principle in favor of this doctrine is, that in the person of the first tenant in tail there is brought before the court one, whose interest is of such a nature as to insure his giving a fair trial to the legal right. This last principle seems to have established the limit to the number of interests which may be represented by the person entitled to the first estate of inheritance. Such interests may be described in different terms; they are interests which depend upon that first estate; which, together with that estate, make up the fee simple; those *which come within the definition of a remainder, viz: ‘a residue of an estate in land depending upon a particular estate, and created together with the same;’ they are interests which the tenant in tail can destroy, and which, for that very reason, there is peculiar propriety in empowering him to defend.” Id. 50. “This kind of representation,” he further says, “has even been carried further: it has been said by Lord Redesdale, that ‘it is sufficient to bring before the court the first tenant in tail in being; and if there be no tenant in tail in being, the first person entitled to the inheritance; and if no such person, then the tenant for life. Many of the same principles which justified the court in proceeding when only the first tenant in tail was present, may be used in justification of this further step. There is in both cases the same necessity, the same convenience, and on the part of persons remotely entitled, the same liability to the vexatious litigation of the present possessors of the property.” Id. 51. After quoting from what Lord Redesdale says in Griffard v. Hort, 1 Sch. & Lef. R. 409, the author proceeds: “ The general principle of representation established in these cases may be thus expressed: ‘In respect of the first estate of inheritance, and of all interests depending upon it, it is sufficient to bring before the court the person entitled to that first estate; and if there be no such person, then the tenant for life. ’ ’
The dictum of Lord Redesdale, in Giffard v. Hort, which has been already quoted, will justify a statement of this kind of representation in these comprehensive words. It is however suggested that there should be some qualification in respect of the tenant for life; and that, except under very particular circumstances, no tenant for life would be considered capable of maintaining the suit, unless he were one to whose issue there was a remainder in tail. For instance, that if A were tenant for life, with remainder 'x'to B for life, remainder to B’s unborn issue in tail; B as well as A must be made a party; and that if A were tenant for life, remainder to B’s unborn issue in tail, remainder to C in tail, and C is living, C as well as A should be made a party. On the other hand, if in the first of these cases B, or in the second C, were not living, a plea of necessity might possibly be admitted for making A sole representative of the legal estate. No direct authority is produced for these latter suggestions, which are however thrown out for consideration, and are in some measure supported by the expressions quoted in the note below. ” Id. 52. The author then proceeds to show how “courts of equity, having adopted the principle of representation, work it out by *755 treating the persons represented as if they had been parties present;” (Id. 54) the object of the court in dealing with rights of this kind being 1‘to settle them forever.” Id. 59. The first section of the first chapter of the author’s work treats of the general rule in regard to parties, before referred to. The second section treats of the “doctrine of representation” as a modification or qualification of that rule. And the third section treats of “exceptions to the general rule.” This last section he thus commences: “The several kinds of representation which have been enumerated cannot properly be termed exceptions to the general rule; they are merely the modes, in which, for the sake of convenience, the court allows the several interests to be protected, with a view to make a complete decree. ’ ’ Id. 64. I have quoted thus freely from the work of Mr. Calvert, because it is a work of high reputation, and was very much referred to by the counsel on both sides in the argument of this case; and also, because I wished fully to show the nature and extent of the doctrine of representation, as understood in England, so far as it applies to this case, and that wherever it applies, the parties represented are as effectually *bound by the decrees in the suit as if they had been parties in their proper persons. See also Mitf. PI. 174, marg. and Story’s Eq. PI. §? 144 and 145.
The only case decided by this court, in which the doctrine of representation has been considered and expressly applied, is the case of Baylor’s lessee v. Dejarnette, 13 Gratt. 152; in which it was held — first, that the son of E took a contingent remainder in fee in the estate devised by B, dependent upon his being alive at the death of E; and secondly, that the son of E, not having been in being when the suit was revived against E, (though he was in being when the decree was rendered,) and having no certain interest in the estate, was not a necessary party, but is concluded by the decree against E, the tenant for life. Judge Bee, in his opinion in that case, in which all the other judges concurred, examined the doctrine quite fully, referring to most of the treatises and cases on the subject, and making quotations from several of them. He applied the doctrine to that case by holding a father, tenant for life of an estate, to be a sufficient representative of his son, who was contingently entitled in remainder to the estate, in a suit brought against the father to subject the estate to a charge thereon, and by holding the son to be concluded by the decree which was rendered in the suit against the father. Judge Bee, in speaking of the suggestion of Calvert, that the tenant for life, who should be regarded as representing the whole estate, must generally be one whose child, if he have one, will become entitled to the inheritance, and who would therefore be induced to make a proper de-fence, and thus take care of the inheritance for his children, says that Calvert admits there is no direct authority for the sttggestion, though he thinks it is countenanced by expressions to be found in several of the cases. Judge Bee further says: “The condition required by this suggestion is, however, fully met in this *case, as the lessor of the plaintiff who would take the remainder in fee if he survived his father, is the son of the tenant for life who was made defendant.” Id. 170. The same observation applies with increased force to this case, in which the unborn persons, who might come into being and become interested in the estate, were represented in the suit by their own parents, and moreover by their grandmother, the tenant for life, and the trustees. In Baylor v. Dejarnette, the son of E came into being pending the suit, and before the decree was rendered, and yet it was held not to be necessary to make him a party by an amended or supplemental bill, because “no estate vested in him upon his birth, and none could vest unless he fulfilled also the condition of surviving his father.” Id. 169. In our case, not only at the time of the institution of the suit of Horton v. Norton, &c., but also when the decrees of sale were pronounced, and the sale was made and confirmed, all persons in being who had an interest in the estate, whether present or future, vested or contingent, were parties to the suit. It seems to me, therefore, that the case of Baylor v. De-jarnette is a direct and binding authority in favor of the doctrine of representation before referred to, and of its application to such a case as this. It is argued, that the doctrine is confined to cases in which the suit is brought to enforce a charge upon an estate affecting the whole fee, in which cases, it is said, that it 'would be very unreasonable and unjust that the party having the charge “should be delayed or embarrassed in enforcing it, by reason of limitations by way of remainder to persons whom it might be impossible or improper to make parties to the cause.” Certainly it would be very unreasonable and unjust. But that is not the only instance in which it would be very unreasonable and unjust that a party should be delayed or embarrassed in the prosecution of his suit by reason of such limitations. *And that case is put in the books and in the opinion of Judge Bee by way of instance, and not as a limitation of the rule, which exists wherever its reason exists, and- that reason is to be found in the convenience and often the necessity of things. This rule of representation often applies to living persons, who are allowed to be made parties by representation for reasons of convenience and justice, because their interests will be sufficiently defended by others who are personally parties, and who have motives both of self interest and affection to make such defence, and it is therefore considered unnecessary to make such living persons parties, and indeed improper to do so, and thus compel them to litigate about an interest which may never vest in them. But the rule also often, and a fortiori, ap *756 plies to persons not in being, and who of coarse may never be in being, who are allowed to be made parties by representation for reasons, not only of convenience and justice, but of necessity also, because it is impossible to make them personally parties. It will be found by an examination of all the cases, that the rule and the reason of it go to this extent, and that necessity is recognized as an all sufficient reason for it wherever such necessity exists. In Giffard v. Hort, supra, Lord Eedesdale uses this language, which is quoted by Judge Lee in Baylor v. Dejarnette: “Where all the parties are brought before the court that can be brought before it, and the court acts on the propertjr according to the rights that appear, without fraud, its decision must of necessity be final and conclusive. It has been repeatedly determined, that if there be tenant for life, remainder to his first son in tail, remainder over, .and he is brought before the court before he has issue, the contingent remaindermen are barred.” See also Finch v. Finch, 2 Ves. Sen. E. 491; Calvert on Parties 52, note 7. In England the cases to which the rule has been generally applied have been cases in which entailed *estates were involved ; and in this country we have no such estates. There have been there no such cases as the one we are now considering, because there the Court of Chancery has not yet, I believe, been authorized by statute to decree a sale of lands in which infants and others under disability are interested, on the ground that it would be to their advantage to do so. When it appears to the Court of Chancery there that an infant would be benefited by a sale of his real estate, all that the court will in general do in such a case is, to give leave to the infant or his friends to apply for an act of Parliament to authorize'the sale; and such an act is, I suppose, always passed in such cases. But here, courts of chancery have been authorized by-general statutes to exercise complete jurisdiction on this subject; and these statutes have, as before shown, been liberally construed, so as to advance the remedy and promote the policy of the Legislature. The same rules which apply to other suits in chancery apply also to suits brought under these statutes, except where they otherwise direct; and therefore the rule in regard to representation applies to the latter suits. That the rule in England applies to other cases than those in which a charge is sought to be enforced against an estate is shown by the case of Gaskell v. Gaskell, 6 Sim. E. 643, 9 Cond. Eng. Ch. E. 643, referred to in the argument of this case, and also in the opinion of Judge Lee, 13 Gratt. 168. In that case, a bill by a tenant for life, with remainder to his unborn sons in tail, for partition, was maintained, and the decree held binding on the sons when they should come into being. The tenant for life was there regarded as the representative of his unborn sons, though he was plaintiff; the Vice-Chancellor being of opinion that it made no difference whether he was plaintiff or defendant, and saying that the court had frequently decreed partition where the tenant for life was defendant. There is nothing peculiar in the i:'subject of partition which rendered the rule of representation applicable to that case. On the contrary, if there be any difference between that subject and any other in this respect, there would seem to be less reason for applying the rule to that subject than to others; for we know that a tenant for life or for years, who holds an estate jointly or in common with others, may have a partition of the estate, so far as he is concerned, without affecting the rights and interests of those who may be entitled to the estate in reversion or remainder, whether such interests be vested or contingent ; and therefore it may be said, that there is no necessity for his asking for a partition which will affect those interests. Yet it is often convenient to do so, and that convenience is a sufficient reason for applying the rule of representation to the case.
But there is another view to be taken of the subject, which I think is perfectly conclusive of the case. I have shown that the Court of Chancery has jurisdiction of the subject matter, both in the exercise of its general jurisdiction over the subject of trusts for the purpose of enforcing the execution of the trusts and powers created and declared by the deed of the 18th day of June, 1840, aforesaid, and also in decreeing the sale of an estate in trust under the statutes before referred to. Let us first consider the case in the former aspect. I think I have shown that the deed confers a power of sale on Dr. Norton, which is a trust power for the benefit of others as well as himself, and which a court of chancery can execute notwithstanding the death of Dr. Norton. A suit has been brought for its execution, to which all persons in being having any interest in the subject or the trust were made parties: the trustees, the tenant for life, and the contingent re-maindermen, being all those who apparently will be entitled to the estate at the death of the life tenant. Now can • it be possible that this suit is defective for *want of necessary parties because some of these contingent remainder-men may die in the lifetime of their mother leaving children who may survive her, and thus become interested per formam doni, and because such children were not, as they could not be, personally made parties? Can it be possible that a court of chancery is powerless during the life of Mrs. Norton, who has already survived her husband twenty-six years, to execute this trust power of sale, although the interest of all the living beneficiaries in the trust, and even of all beneficiaries therein who may hereafter come into being, would be promoted by the sale, and manifestly requires it? Powerless, because possibly persons not now in being may hereafter come into being, and become interested in the subject on the further and *757 double contingency of their surviving, first their parent and then their grandmother, and because the doctrine of representation does not apply to such a case? If ever there was a case to which it should apply, this, it seems to me, is one. The rule in regard to parties is a rule of convenience, and the court will never allow it to be so applied as to do an injury, to obstruct the administration of justice. To do so, would be to prefer the shadow to the substance, the means to the end; to sacrifice justice to the forms devised for its attainment. It seems to me that when, in a suit, brought to enforce the execution of such a trust, all persons in being who are interested in the object of the suit are convened before the court as parties, it is perfectly competent for the court to decree accordingly, and any title acquired under such decree is good, not only against those persons, but all others who may afterwards come into being and become interested in the trust.
Now let us consider the case in the other aspect; that is, as a case in which a trust estate was decreed to be sold under the statutes aforesaid. The case comes within the ^express terms of some of these statutes, as I have already shown. Especially does it come within the express terms, and true intent and meaning, of the act of January 20th, 1832, authorizing the sale of trust estates in certain cases; and of the Code of 1849, ch. 128, $ 2; and of the act of Eebruary 18, 1853, amendatory of chapter 128 of the Code. When, therefore, the legislature, in general terms, empowered a court of chancery to decree a sale of any trust estate, if it be clearly shown that the interest ox the beneficiaries will be promoted, and the court is of opinion that the rights of no person will be violated thereby, did it not, by necessary implication, if not expressly, empower the court to use all the means which were necessary to accomplish the end in view? The legislature knew that in many, if not most, trust estates, unborn persons might come into being and become interested. Did they mean to exclude all such estates from the operation -of the law, when they came not only within its literal terms, but also within the spirit and policy of the law? If they had so intended, would they not so have expressly declared? Would they have left their intention in doubt in a case where there should be the greatest possible certainty? Is it not much more reasonable to suppose that they intended to embrace all trust estates which their words, and the spirit and policjr of their law embraced? and to require only that all persons in being who were interested in the trust should be made personally parties to the suit, and to make the decree therein binding, not only on those parties, but all other persons who might thereafter come into being and be interested in the trust? In other words, to adopt the rule of representation before mentioned, and apply it to such unborn persons? Is there not at least as much reason for applying it to such a case as for applying it to any other case in chancery? If it be a proper rule, and founded on convenience or necessity, in a suit brought *to recover property, or enforce a charge against it, is it not at least as much so in a suit brought merely to change the form of the subject or investment, and that, too, for the benefit of all persons who are or may become interested therein? Is it not sufficient, in the latter case, to take care to guard the possible interest of unborn persons, by the presence, as personal parties to the suit, of all living persons who are interested therein, some or most of whom have the same interest in kind, though greater in degree, than that of those who may hereafter become interested and stand in the closest degree of relationship to them? The amendatory act of Eebruary 18, 1853, plainly contemplates cases in which unborn persons may become interested in the subject, for it expressly embraces estates on which contingent estates are limited, and we know that such contingent estates frequently, if not generally, enure to persons unborn at the time of the creation of the trust, and depend on the contingency of their being afterwards born. The act of March 15, 1858, before referred to, expressly declares that “the decree rendered in such suit (as is authorized by that act), shall be as binding upon all persons who may be born thereafter and become interested in the said estate, in like manner and to the like extent as it is upon the parties to the said suit. ” That act does not apply to this case, as already mentioned, but it shows that the Legislature certainly intended in that case to apply the rule of representation, and make the decree conclusive against persons who might be born after the decree and become interested in the estate, for they expressly said so. There is at least as much, and, indeed, the same, reason for applying the rule to the case of a sale oí a trust estate, as to the case of a sale of an estate subject to a contingent limitation, as a trust may be, and, in fact, is, in this very case. If, therefore, the rule does not apply to the case of a sale of a trust, estate, it is only because the legislature has not expressly said so, and not because of any unfitness of the thing. But I have already shown, I think, that the Legislature did say so by strong implication, and that such is the proper construction and effect of the law. It is argued, I know, that the express declaration before referred to, contained in the act of March 15, 1858, shows that the Legislature did not intend to give the same effect to decrees made for the sale of trust estates under the statutes before mentioned, as those statutes contain no such express declaration. The answer to this argument is, that while it belongs to the Legislature to enact laws, it is the province of the courts to construe them; and though the opinion of the Legislature as to the meaning and effect of prior statutes, is entitled to great respect, it is by no means binding on the courts. But it does not follow, from, *758 the terms used ill the act of March IS, 1858, that the legislature thereby intended to indicate any opinion in regard to the true construction of any prior statute. It was meet and fit that in the a'ct of 1858 they should use such language as plainly to show their meaning, and leave no room for doubt or difficulty. They were not legislating in regard to the sale of trust estates, or they would have made the same express declaration in regard to them, as there was the same reason for doing so. They left them to stand where the law had already placed them.
In Garland v. Roving, &c., before referred to, there is something in the opinion of the court delivered by Judge Coalter, apparently inconsistent with some of the views I have expressed. In that case it was possible that James Roving and wife might have other children who would become interested with those already in being in the estate which was sought to be sold, and the court seemed to suppose that it would be necessary to sell the estate, if sold at all, subject to the contingent claim of such after-born children; *thus ignoring, or taking no notice of, the doctrine of representation as applicable to the case. Notwithstanding this supposed difficulty, the court was of opinion that it was competent to a court of chancery to decree such a sale. “It will .therefore,” said the court, “be for the consideration of the Chancellor, whether a fair and proper sale of the property can be made under that condition, subjecting the fund, to be invested as aforesaid, to the purchaser for his indemnity against any such possible claim; of all which he will judge before the sale and arrangements are finally closed. If, under all these-circumstances, a sale manifestly to the interest of the infants can be made, this court thinks it will be proper to decree the same, taking care.that the proceeds thereof shall be properly invested and secured for the use of the cestui que trusts, according to their rights as they now appear, or may hereafter appear, or of any future cestuis que trust, who may be entitled under the deed aforesaid, with liberty to the parties from time to time to apply to the court for further directions.”
Now it would certainly ‘ have been much better for all persons concerned, if the court had applied the doctrine of representation to that case, and made the decree for a sale conclusive against any such future possible claimant, instead of directing the sale to be made subject to his claim. That case was submitted to the court without argument, by Mr. Chapman Johnson, who was counsel for both parties. And the doctrine of representation, as applicable to the case, seems therefore to have been overlooked. But however that may be, the case was decided soon after the first statute on the subject of the sale of the real estate of infants was passed, and under that statute; and can afford, therefore, no binding rule in regard to the construction of subsequent statutes on the subject, if it can afford any such rule at all, even in regard to the statute *under which it occurred. But it is in direct conflict, even in this respect, with the case of Cooper v. Hepburn, &c., supra, recently decided by this court. That case occurred under the original statute of 1819, amended by the act of 1827, which amendment, however, does not seem to make a material difference between the two cases in regard to the question we are now considering. In Cooper v. Hepburn, &c., M, as guardian of his infant children, filed a bill for the sale of the real estate held by himself for life and by his children in remainder, and it was decreed to be sold accordingly. The purchaser was compelled to complete his purchase, although it was possible that other children might after-wards be born and become interested in the subject, the court having held that the remainder vested in the first child of M upon his birth, subject to open and let in the after-born children as they severally came into being. Thus the doctrine of representation was actually applied to the case, and it was just such a case in this respect as was that of Garland v. Roving. It is true, that neither in the argument of counsel nor in the opinion of the court in the case, was any express reference made to that doctrine. But it was no doubt because it was considered as a matter of course, both by counsel and court, that if the case came within the statute, as the court decided it did, then it could only be necessary to make all persons in being and interested in the subject parties to the suit, and the decree would be binding on any other children who might afterwards be born and become interested, and who were sufficiently represented by the children already in being and parties to the suit. The purchaser in that case was represented in this court, and no doubt in the court below, by able counsel, and used the most strenuous efforts to get rid of his purchase, which turned out to be a bad one for him, and, of course, a good one for the owners of the estate. But he made no objection *on account of the possible interest of any child which might afterwards be born.
It was argued by the counsel for the appellants, that the Circuit Court did not intend, in the case of Norton v. Norton, &c., to decree the sale of more than the interest of the parties to the suit in the real estate therein mentioned, and therefore sold it subject to the contingent interest of any other persons who might afterwards be born and become interested therein. And in support of this argument some of the decrees made in the case were referred to, in which the Commissioners were directed to convey to the purchasers respectively “all the estate, right, title and interest of all or anj- of the parties to this cause in and to the lot purchased by him.” Now there can be nothing in this argument, if it be true, as I think I have shown, that the unborn persons who might come into being and become interested in the subject were, in fact, parties to the suit by repre *759 sentation, for then they are included in the very terms of those decrees. But, on the •other hand, the language of the decrees was not uniform in that respect. On the contrary, we find that in the first decree of sale, made in June, 1847, the Commissioners are directed to sell “the property above referred to and in the proceeding's mentioned. ’ ’ And to the same effect is the decree of March 20th, 1848, confirming the sales which had previously been made, and directing conveyances to be made to the purchasers respectively. Certainly the court which decided, and the counsel who managed that cause, had no idea that the property was to be sold subject to the contingent interest aforesaid. The court would not have decreed such a sale, which must inevitably have occasioned a sacrifice of the property. If it had been intended to make such a sale, the intention ought to have been plainly expressed on the face of the decree, so as to give notice to purchasers; *as was done by this court in Garland v. Iyoving. Certainly the purchasers of the property had no idea that it was sold subject to such a contingency; and the court and counsel must have known that they had not, and that they believed they were acquiring a perfect title. To impute to the court and counsel, under these circumstances, an intention to sell the property subject to the contingency aforesaid, would be to impute to them a fraud, of which they were incapable of being guilty. I know the learned counsel of the appellants in this case did not intend to make such an imputation, and would be among the last in the world to do so.
But it is said that all the descendants of Mrs. Norton by Dr. Norton may die in her lifetime, and thus, at her death, the trust purposes being fully accomplished or exhausted, and all the objects of the trust being extinct, the subject would result to the heirs at law of Mrs. Call, who were not parties to the suit of Norton v. Norton, and are, therefore, not bound by the decrees rendered therein. This is, certainly, a very improbable contingency; that all the five children of Dr. and Mrs. Norton, living at the time of the creation of the trust, and all their descendants afterwards to be born, should die in Mrs. Norton’s lifetime; so improbable, that no provision whatever was made for it in the trust. Still it is a possible contingency; and if it should happen, the heirs of Mrs. Call, whoever and however numerous they may be, will become entitled to the trust subject. But surely this remote possible interest can interpose no obstacle to the sale of the trust estate under the statutes aforesaid. That sale does not extinguish nor diminish their interest, but only changes the form of the subject for the benefit of all parties concerned, as well those heirs as others, for whose use, whenever, if ever, they shall become entitled to it, the subject will be ^secured and preserved. If the tenant for life and the contingent remaindermen in being, are sufficient representatives of the contingent remaindermen not yet in being, who are all that can claim per formam doni, and all of whom come in before the heirs at law of Mrs. Call, who can come in only by operation of law after the exhaustion of the trust, surely they are sufficient representatives also of the heirs at law, whose interest is of the same nature, though not of the same degree, as that of the contingent re-maindermen. If those heirs are entitled to any representation at all in such a suit, the trustees to whom a legal estate in fee simple is conveyed by the deed, would seem to be the most appropriate pefsons to occupy that position. But in fact, they are not entitled to representation in the suit at all. The property having been conveyed to the trustees and their heirs forever on the trusts declared in the deed, the heirs of the grantor have no interest in the subject, and. are not to be regarded until all those trusts are satisfied. In a suit, therefore, for the execution of the trusts, they have no legal or equitable interest, and are not necessary nor proper parties. It is only when the trust fails, or is fulfilled, that their interest springs into existence rather than that the estate should escheat to the Commonwealth.
I have now, I believe, considered and disposed of all the questions which arise in this case. My opinion is no doubt too long. But the case was argued at very great length, as well as with very great ability, involves property of great value, and is very important not only in itself, but also in its relation to other cases, depending on the same questions which might hereafter arise. I have, therefore, thought it proper to express my views very fully on all these questions. My conclusion is, that there is no defect in, nor cloud over, the title acquired by the appellee Davis *under the decrees in the suit rendered in the case of “Norton guardian v. Norton, &c.,” and therefore that there is no error in the decree of the Court of Hustings, and that it be affirmed.
The other judges concurred in the opinion of Moncure, P.
Decree affirmed.