Lee, J.
As the lessor of the plaintiff exactly fills the description given of the devisee in remainder after the expiration of the life estate devised to George D. *163 Baylor in the half of the New Market estate embracing the premises now in controversy, by the will of his father John Baylor 2d, being the oldest son George D. Baylor and having survived his father, and as he brought his suit in a short time (less than three years) after the death of his father, he must recover unless the title which he was to take upon the death of George D. Baylor was intercepted by the decree in the case of the D unlops against the representatives of John Baylor 2d, and was by virtue of that decree and the sale and conveyance made under it, transferred to and vested in the purchaser. Thus the decision of this cause must depend upon the operation and effect to be assigned to this decree in its bearing upon the estate in remainder devised to the lessor of the plaintiff, and this is resolved into the enquiry how far and to what extent he although no party was bound by it. That it was legitimate and proper evidence cannot be questioned, for a judgment or decree is always evidence of the fact that such judgment or decree was rendered and of the legal consequences of that fact, whoever were the parties to the suit in which it was rendered; and where a title is derived under a decree, it is necessary to establish its existence in order to show the legal validity of the deed made under its authority; and the admissibility of the record for that purpose as a fact introductory to a link in the chain of the title and constituting a part of the muniments of the party’s estate is a matter of familiar recognition and constant practice. 1 Stark. Ev. 187, et seq.; 1 Greenl. Ev. § 538; Barr v. Gratz's heirs, 4 Wheat. R. 213. But although admissible in evidence, how far this decree serves to defeat the plaintiff’s title, is a matter of different consideration, and it is insisted on his part that he ought not to be held bound by it to any extent or for any purpose whatever, because he was no party to the cause in which it was pronounced and claims not under *164 any party but under the devise in the will of his grand father John Baylor 2d, by whom an estate for life was devised to his father with remainder to him in fee.
The general rule certainly is that none are bound by a judgment or decree except those who were parties or standing in privity with others who were. But there are exceptions to the rule of equal authority with the rule itself.
It is clear that the limitation in the will of John Baylor 2d to the eldest son of George D. Baylor, lawfully begotten, who should be living at the death of his father was neither a vested remainder nor an executory devise but must be construed to be a contingent remainder. At the time the will was made, George D. Baylor had no son, and the limitation was of a freehold for life with remainder to a person not in esse. Such a limitation is a contingent remainder. Keyes on Future Interests § 222, p. 104; 1 Lom. Dig. 411; Fearne on Cont. Eem. 9. Nor was its character changed by the subsequent birth of the lessor of the plaintiff in 1816, some eight years after the death of the testator. Whether a condition upon which a devise is made to depend is to be regarded as a precedent or subsequent condition must be determined by the ajq^&rent intent of the testator. Here it wras plainly the intention that the remainderman should fill all the conditions of the devise before he could take. He must be the eldest son of George, lawfully begotten, and he must survive his father. Until all these things concurred, no estate was to vest. The language is “ I devise and give the same in fee simple and absolutely to his eldest son lawfully begotten then living.” Whenever the remainderman took he took an absolute, unconditional, unqualified fee simple estate. It could not be an estate vested upon his birth but liable to be defeated by his subsequent death during the lifetime of his father. If that had occurred *165 no interest would have descended to his heirs, otherwise the ulterior limitation over to John Baylor 3d for life with remainder in fee to his oldest son would been defeated. For there can be no such limitation over after a fee except by way of alternative or con-1 J J ditional limitation. And the distinction is. between the cases where a fee is given to the first taker and those in which he has but a freehold. Where by a will a fee is given and afterwards an estate in fee is limited to some other person, the latter will be construed to be an executory devise provided it be limited to take effect within the time prescribed by the rules of law : but where a freehold only is given to the first taker and afterwards a fee is limited upon a contingency the subsequent devise is in the nature of a remainder and being capable of being supported by the precedent freehold estate as a contingent remainder it shall not be deemed an executory devise. For where a limitation may take effect as a contingent remainder it shall never be construed to be an executory devise. Here the estate limited to the first taker was an estate for life and the remainder over was therefore not to be construed an executory devise, but a contingent remainder which retained that character until the death of the tenant for life and which conferred upon the remainderman, no interest but a mere possibility. And these views will I think be found sufficiently supported by authority. See Keyes, § 82, p. 48 ; 1 Lom. Dig. 417; Fearne on Rem. 394; Plunket v. Holmes, 1 Sid. R. 47, 1 Lev. 11; Doe ex dem. Planner et ux. v. Scudamore, 2 Bos. & Pul. 288; Doe ex dem. Mussell v. Morgan, 3 T. R. 763; Purefoy v. Rogers, 2 Saund. R. 380; Carter v. Barnadiston, 1 P. Wms. 505; Luddington v. Kime, 1 Ld. Raym. 203; 3 Lom. Dig. 281; Fearne 373; Taylor and Biddall's Case, 2 Mod. R. 289.
Assuming then that the lessor of the plaintiff took *166 a mere contingent or possible interest under the will of his grand father which would only become vested the death of the father, we are to enquire how far this interest was bound by the decree in the chansu^’ an<^ whether the purchaser under it took only the interest of the tenant for life or the whole estate discharged of the limitations by way of remainder.
It would certainly be very unreasonable and unjust that a party having a charge upon an estate affecting the whole fee should be delayed or embarrassed in enforcing it by reasons of limitations by way of remainder to persons whom it might be impossible or improper to make parties to the cause. To obviate the difficulty in such cases the doctrine of virtual representation has been introduced, according to which certain parties before the court are regarded as representing those coming after them with contingent interests, who therefore it is not required should be made parties. Accordingly it is well settled that it is not necessary that remaindermen after the first estate of inheritance should be made parties: and where real estate is in controversy which is subject to an entail it is sufficient to make the first tenant in tail in esse in whom an estate of inheritance is vested a party with those claiming prior interests without making those parties who may claim in reversion or remainder after such estate of inheritance. And a decree against such tenant in tail will bind those in reversion or remainder although by the failure of all the previous estates, the estates in remainder or reversion might afterwards become vacatged. Reynoldson v. Perkins, Ambler’s R. 564; Lloyd v. Johnes, 9 Ves. R. 37, 56; Cockburn v. Thompson, 16 Ves. R. 321, 326; Hopkins v. Hopkins, 1 Atk. R. 581, 590; Giffard v. Hort, 1 Scho. & Lef. 386; Finch v. Finch, 1 Ves. jr. R. 534; Mit. Pl. 140, 141; Cholmondeley v. Clinton, 2 Jac. & Walk. 133. But *167 the courts have not stopped here; for under certain circumstances, the first tenant for life has been regarded as representing the entire fee, and the decree rendered against him been held binding upon those coming in after him in remainder. In Giffard v. Hort, ubi sup. Lord Redesdale says, “ where all the parties are brought before the court that can be brought before it and the court acts on the property according to the rights that appear, without fraud, its decision must of necessity be final and conclusive. It has been repeatedly determined that if there be tenant for life remainder to his first son in tail, remainder over, and he is brought before the court before he has issue, the contingent remaindermen are barred.” And in the same case, this learned judge remarked that “courts of equity have determined on grounds of high expediency that it is sufficient to bring before the court the first tenant in tail in being, and if there be no tenant in tail in being, the first person entitled to the inheritance, and if no such person, then the tenant for life.” In Leonard v. Lord Sussex, 2 Vern. R. 527, there was a tenant for life of a trust remainder to his sons. The tenant for life before he had a son born brings a bill against the trustees and an account is decreed which is afterwards taken : Held that the account should stand and be binding upon the sons. In Allen v. Papworth, 1 Ves. sen. 163, there was a bill by husband and wife and an account taken. Lord Hardwicke said the account should be held binding on any contingent remainder-man when his title should afterwards vest nor should he open it unless fraud or errors are shown therein. He said it “ often happens on settlements where there is tenant for life with limitations in remainder, upon a bill for an account where none but tenant for life is in being, a child afterwards coming in esse shall only have liberty to surcharge and falsify if no fraud.” In this case it appears that in point of fact the son was in *168 being at the commencement of the proceeding and there appears to be a mistake in the report which as-that at that time no other person was entitled. See note of editor and Supplement, p. 92. The case of Finch v. Finch, 2 Ves. sen. 491, was a bill by tenants for life for the execution of the trust of an act of parliament and the will of Lord Nottingham; and one of the questions was whom it was necessary for the plaintiff to bring before the court. Lord Hardwicke said “it is admitted to be necessary to bring the first person entitled to the remainder «and inheritance if such is in being. It is true if there is none such in whom the remainder of the inheritance is vested in being (as if none of the sons had issue male,) then it is impossible to say the creditors are to remain unpaid and the trust not to be executed until a son is born. If there is no first son in being the court must take the facts as they stand. It would be a very good decree and no son born afterwards could dispute it unless he could show fraud collusion or misbehaviour in the performance of these trusts: otherwise he would be bound by it.” It will be observed that in this case the tenant for life was plaintiff and the remainderman who it was said should be brought before the court was one who had a vested and not a mere contingent remainder. So a bill by tenant for life with remainder to his unborn sons in tail, for partition, has been maintained and the decree held binding on the sons when in esse: and the vice chancellor said the court frequently decreed partition where the tenant for life was defendant: that the manner in which the parties were arranged could make no difference and therefore that in this case the partition might very well be carried into effect. Gaskell v. Gaskell, 6 Sim. R. 643, 9 Cond. Eng. Ch. R. 448.
Now when the original, amended and supplemental bills in this case were filed, there was no son of *169 George D. Baylor in esse, the lessor of the plaintiff, who was the oldest son, not having been born till August 1816; it was therefore sufficient, according to the rule to make George D. Baylor the tenant for life, defendant, and the decree against him would bind all ° contingent remaindermen coming in after him. And the only question is whether upon the birth of the lessor of the plaintiff pending the suit it was necessary in order to bind him that he should have been made a party by an amended or supplemental bill. I think not. No estate vested in him upon his birth and none could vest unless he fulfilled also the condition of surviving his father. Until then he could have no title to the inheritance, but a mere contingent interest or possibility that he would take on the death of his father, by reason of his outliving him. The only vested estate was that of the tenant for life, his father, and he was the proper party to bring before the court as representing the whole estate and all those who are to come in after him by way of contingent remainder. Those who might be entitled to future uncertain and contingent interests it was neither necessary nor proper to make parties although they might be in life. This is the doctrine asserted'in Pelham v. Gregory, 1 Eden’s R. 518; S. C. 3 Bro. P. C. 204. Lord Northington speaking of the defendants Lord Vane and Lord Darlington, said “Now the rights of these two defendants in the condition in which this lease is at present, are legal rights and yet being contingent and future, they are not attended till they come into possession with a legal remedy. And I have no apprehension that any person can have a right to call another into this court to make him contest here by anticipation a future legal right: I have as little conception that this court when such a right is brought hither has any jurisdiction to take cognizance of it.” *170 1 Eden’s R. 520. This -case was regarded by Lord Redesdale as a decisive authority and he expressed the opinion that many cases might be found where bills had been dismissed upon this ground. And he accordingly held upon a similar principle that a remainderman could not be held to litigate a title which might never be beneficial to him. Devonsher v. Newenham, 2 Sch. & Lef. 197. If it was not necessary to call in the contingent l'emainderman in those cases, still less would it be so where, as here, he was not born till after the suit was commenced.
In the excellent treatise of Mr. Calvert on Parties to Suits in Equity, the general principle of representation established by the cases is thus expressed : “In respect of the first estate of inheritance and of all interests depending upon it, it is sufficient to bring before the court the person entitled to that first estate: and if there be no such person then the tenant for life.” Calvert, p. 52. It is stated in terms very similar or to the same effect by other learned authors. Story Eq. Pl. § 145, 792; Coop. Eq. Pl. 36, 77 to 83. Mr. Calvert however suggests that there should be a qualification as to the tenant for life and that except under very particular circumstances, the tenant for life who should be regarded as representing the whole estate must be one whose child if he have one, will become entitled to the inheritance. The idea is that there would be thus afforded a guaranty for a proper defense according to the dictum in Dayrell v. Champness, 1 Eq. Cas. Ab. 400, that the tenant for life is to take care of the inheritance for his children. He admits however there is no direct authority for the suggestion though he thinks it is countenanced by expressions to be found in several of the cases. Calvert on Parties, p. 52, 53, 192. The condition required by this suggestion is however fully met in this case as *171 the lessor of the plaintiff who would take the remainder in fee if he survived his father is the son of the tenant for life who was made defendant.
Upon the merits of the chancery case I shall remark very briefly.
I think the debt claimed was sufficiently established by the testimony of Pendleton,, and though it might have been barred by the statute of limitations in an action upon the account at law, yet I conceive that the amount for which the decree was rendered was not barred at the death of John Baylor 1st in 1772, and that by his will a charge was created upon the lands devised to his three sons John 2d, George and Robert for the payment of his debts in the proportions named in the will: and this charge would prevent the statute from running against the proceeds of the sale of the land upon the principles of Fergus’ ex’ors v. Gore, 1 Sch. & Lef. 107; Burke v. Jones, 2 Ves. & Beame 275 ; Ault v. Goodrich, 4 Russ. R. 430, 3 Cond. Eng. Ch. R. 740; Kane v. Bloodgood, 7 John. Ch. R. 90, 129. That there was such a charge seems to be very clear. Both parties in this action claim title from John Baylor 1st as the common source. The devisees under his will took the estates devised to them upon the terms of the will which expressly required that John should pay one-half of the debts not otherwise satisfied and George and Robert should pay the other half. By accepting the devises, the devisees became personally liable in respect of the subjects devised to them, respectively, to their shares of the debts and the creditors were under no necessity to look to the general estate of John Baylor 1st before asserting their claims against the devisees and the subjects devised. John Baylor 2d who took the New Market estate was in Europe at the date of the will and at the testator’s death in 1772. When he returned to Virginia does not distinctly appear, but he states in *172 his answer that he went back to Europe in 1775 so Pr°bably returned from his first visit shortly his father’s death : and there is no reason to suPPose that the profits of the property during the interval were sufficient to pay the debts or that they J J were paid otherwise. Nor was the bond given by Armistead a discharge of the debt. It purports to be the bond of John Baylor as well as of Armistead and never having been executed by the former it may be questioned whether it was binding even on Armistead upon the principles of King v. Smith, 2 Leigh 157, and Hicks v. Goode, 12 Leigh 479, 490. But however this may be, in the absence of proof that it was intended at the time to discharge the original debt, it ought not to be deemed to have that effect. I refer to the cases of Sale v. Dishman’s ex'ors, 3 Leigh 548, and Weaver v. Tapscott, 9 Leigh 424, the principles of which will apply to the question here. That the decree was for three-fourths of the debt instead of the moiety only charged on the estate of John Baylor 2d by his father’s will constitutes no objection. John Baylor 2d was the executor of his brother George and doubtless gave bond as such, and having received assets, he should have paid George’s fourth part. Failing to do this, this fourth was a debt from his estate and was charged upon his real estate (if no otherwise) by his executorial bond.
But with regard to these and the other supposed errors in the proceedings it is sufficient to say that they cannot be examined into when the decree is offered in evidence in a court of law. And so with regard to the charge of collusion. If there was any improper arrangement between those parties to subject the property to a debt with which it was not chargeable in whole or in part, or if any wrong were done in throwing the whole burden upon that part of the land held by Geoi'ge D. Baylor, the remedy is not *173 to be sought in the exclusion of the decree which was the basis of the defendant’s title. All these are matters purely of equitable cognizance with which court of law has no concern. To undertake to reverse the proceedings would be to usurp the province of the court of chancery, and to do what even that court would not do in this collateral way. For that court would not without proper proceedings to present the subject directly, disregard this decree or reject it as evidence. So long as it remains unreversed it must have the force and eifect of an adjudication upon the entire estate and must be considered to devest the title out of the defendant and those claiming in remainder after him. Although it is a decree in chancery and not a judgment at law, yet our courts of chancery being courts of record, their decrees may be the basis of title in a court of law, the same as a judgment of recovery in a real action. And the deed of the marshal made in conformity to its decree operates to transfer the entire title in fee simple to the purchaser and must so stand and be accepted as long as the decree on which it rests remains in force. If there be errors to the prejudice of the remainderman for which the decree is liable to be reversed he may, it would seem, make himself a party to the original suit by filing a supplemental bill to have the benefit of the proceedings for the purpose of appealing. 3 Dan. Ch. P. 1604; Giffard v. Hort, ubi sup.; Osborne v. Usher, 6 Bro. P. C. 20; Lloyd v. Johnes, 9 Ves. R. 37, 55 ; Calvert on Parties 193; Sto. Eq. PI. § 144. Whether however an appeal would avail the party in this case, or whether he can maintain a bill to impeach the decree for fraud or whether he can have contribution or a new partition are questions not arising in this case and upon which I mean to express no opinion. All that I mean to say is that as the case now stands, the doctrine of equitable representation by the father, te *174 nant for life, of Ms sons claiming a contingent re-binder in fee, must apply; and that although the might afterwards if not hindered have become a vested estate, yet that the remainderman is still bound by the decree and must so remain as long j , ° as it continues m force and unreversed.
I have not thought it necessary to examine the analogous case of a recovery at law in a real action and its effect in defeating subsequent estates in remainder: nor to consider how far that effect would be avoided by showing that the recovery was by default or collusion under the provisions of our act taken from the statute of Westm. 2. The court of law must give to this decree the same force and effect which it would have in the court of equity when brought incidentally to its consideration in another suit. In the latter it must be regarded as binding upon all those coming in by way of contingent remainder after the tenant for life, and it must therefore be regarded as binding upon the lessor of the plaintiff in this action.
I am of opinion to affirm the j udgment.
The other judges concurred in the opinion of XíEE, J.
Judgment affirmed.