[Civ. No. 693.    Second Appellate District.—April 15, 1910.]

COUNTY OF LOS ANGELES, Respondent, v. E. H. WINANS, CHARLES A. COLE et al., Appellants; MRS. EMMA MEANS and J. W. MEANS, Her Husband, et al., Respondents.

EMINENT DOMAIN—MONEY IN COURT—SETTLEMENT OF INTERESTS—PROTECTION OF UNBORN GRANDCHILDREN.—In this proceeding in eminent domain it is held that the court properly settled the rights of conflicting claimants to the property out of the money paid into court, and subjected the rights of the appellants to the rights of unborn grandchildren to an alternative contingent remainder in the property.

ID.—CONVEYANCE OF ESTATE FOR LIFE—REMAINDER TO HEIRS OF BODY—PURCHASE.—When property in this state is conveyed to a mother for life, with remainder to the heirs of her body, those interested in the remainder take by purchase and not by inheritance.

ID.—CONTINGENT FUTURE INTEREST.—Such remainder is a contingent interest, future in character, and the person to whom and the time of the happening of the event upon which it is limited to take effect were both uncertain at the time of its creation.

ID.—CONTINGENT REMAINDER NOT VESTED.—Since the uncertainties at the time of the creation of the contingent remainder continue to exist until the death of the life tenant, it did not and could not vest until her death, because she could have no "heirs of her body" prior to her decease. In the interval, all of her children may die, and the entire estate might vest wholly in her unborn grandchildren.

ID.—INTERESTS OF UNBORN GRANDCHILDREN NOT VOID FOR UNCERTAINTY, NOR MERE POSSIBILITIES.—The interests of unborn grandchildren in the contingent remainder are not void because of the improbability of the contingency on which they are limited to take effect; nor can such interests be regarded as mere possibilities, such as the expectancy of an heir apparent, as they do not depend upon the law of succession to determine whether or not they will take effect, and they cannot be defeated by the testamentary or other act of the ancestor.

ID.—CODE SECTION AS TO VESTED FUTURE INTERESTS INAPPLICABLE.—Section 694 of the Civil Code relating to a vested future interest "in a living person" has no application to a future contingent remainder in unborn grandchildren.

ID.—DISTINCTION BETWEEN VESTED AND CONTINGENT REMAINDERS.—Where the preceding estate is limited to depend on a certain event which must happen, and the remainder is so limited to a person *in esse,* and ascertained, that the preceding estate may determine

prior to the expiration of the estate in remainder, the remainder is vested; but where the preceding estate is to determine upon an event which may never happen, or where the remainder is limited to a person not *in esse,* nor ascertained, or requires the concurrence of a dubious, uncertain event, independent of preceding estates, to give it a capacity of taking effect, the remainder is contingent.

Id.—Alternative Contingent Remainder.—The future contingent remainder in unborn grandchildren is an "alternative contingent remainder," under section 696 of the Civil Code. Such contingent remainder will vest in the unborn grandchildren whose father or mother, the child of the life tenant, fail to survive her decease. In that case, the grandchildren become the alternative substitutes for the deceased children of the life tenant, in taking the same vested fee in remainder which would otherwise have vested in her children. The taking of the unborn children is not a contingency dependent on a contingency, nor a subsequent contingency, but it is the same contingency which may happen, at the same time, in more than one way.

Id.—Virtual Representation of Unborn Grandchildren.—The conclusion that the rights of unborn grandchildren are contingent and not vested does not preclude the application to them of the principle of virtual representation, if the proceeding in which such representation was exercised was such as to justify it.

Id.—Necessary Rule of Representation of Unborn Remaindermen.—Protection in Proceeds of Sale.—When an estate in persons living is subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate for all purposes of litigation in reference thereto, and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, not only for themselves, but also for the persons unborn, as a necessary rule. The rights of persons unborn are sufficiently cared for if, when the estate is sold under a valid judgment, the proceeds take its place, and are secured in some way for such persons.

Id.—Virtual Representation Confined to Matter of Necessity.—The better rule is that virtual representation of unborn persons can be applied in support of a judgment only as a matter of necessity. The necessity of relying thereupon to acquire ·jurisdiction of the estate of unborn persons is apparent when the estate is sold and the proceeds take its place, and are so secured as to include the caring for and preserving the rights of the persons so represented.

Id.—Virtual Representation Limited by Good Faith.—The rule of virtual representation is confined to cases where the representation is·in good faith, so that what is done by the representation is all that the represented person could do if personally present. The interests of representative and represented must be so identical

that the motive and inducement to protect and preserve may be assumed to be the same in each. If the sole purpose of the living person interested is to secure some advantage for himself, or to serve the convenience of one whose title is being quieted against the unborn remaindermen, virtual representation could not be permitted to exist.

ID.—PROTECTION OF PERSON REPRESENTED AGAINST FRAUD.—The protection of a person brought into court by representation which is fraudulent is to be found in his right when he becomes capable of suing in his own right to attack the decree on the ground of fraud and collusion in its procurement.

ID.—STATUTORY REPRESENTATION IN FORECLOSING LIENS OF STREET ASSESSMENTS.—The street improvement act of 1885, under which the land was sold under foreclosure of liens of street assessments, recognizes a constructive or virtual representation of unborn persons who have contingent rights in the property, by contemplating that the decree of foreclosure and sale shall subject the entire title to the property charged with the lien. All interests therein are constructively before the court when the service is made according to the statute.

ID.—FORECLOSURE PROCEEDING NOT IN REM—VIRTUAL REPRESENTATION NOT PRECLUDED.—The action to foreclose the lien of the street assessment is not *in rem*. If it were, there would be no need of any principle of representation. The fact that the judgment will not bind the entire world does not prevent the application of the doctrine of virtual or constructive representation contemplated by the statute.

ID.—ACQUISITION OF INTERESTS OF UNBORN GRANDCHILDREN PREVENTED —TRUST AGREEMENT FOR "HEIRS OF BODY."—The acquiring of jurisdiction of the interests of the unborn grandchildren in the action to foreclose the assessment did not effectually vest those interests in the purchasers at the sales, where respective agreements made by them with the life tenant and with each other were merged in a declaration of trust for the benefit of herself "and the heirs of her body."

ID.—ACTIONS TO QUIET TITLE—VIRTUAL REPRESENTATION PRECLUDED— PRIOR CONVEYANCE BY LIFE TENANT AND DAUGHTER.—Where before the commencement of actions to quiet title, the life tenant and her daughter had conveyed their interests to a predecessor of the plaintiff, their interests became hostile to that of other "heirs of her body," and neither she nor the daughter nor the plaintiff could represent the unborn grandchildren in actions to quiet title as against the other "heirs of her body," for the purpose of shutting off all other interests.

ID.—PARTIES TO ACTION TO QUIET TITLE—"ADVERSE CLAIMANTS."— Under section 738 of the Code of Civil Procedure, the action to determine adverse claims must make the "adverse claimants" par-

ties to the action, whether the service be personal or by publication, and where the virtual representation of unborn remaindermen is precluded, such unborn persons not parties to the action cannot be bound by the decree therein.

ID.—LEASE BY LIFE TENANT—BUILDING BY LESSEE—FORECLOSURE OF MECHANICS' LIENS—ABSENCE OF REPRESENTATION.—The life tenant having the possession of the property was authorized to lease the same so as to bind her interest, and where the lessee contracted to improve the property, the unborn grandchildren were not so connected with the lease as to be affected by the foreclosure of a mechanic's lien against the property. The life tenant could not ask a court of equity to preserve her interest at their expense.

ID.—GUARDIANSHIP OF MINOR BY HUSBAND—POWER LIMITED BY ORDER OF COURT.—Where the husband was appointed as guardian of the minor children by the probate court, he had no power to bind their interests by contract or by mechanics' liens, without an order of the court.

ID.—JUDGMENT FORECLOSING LIENS NOT INVOLVING REPRESENTATION—INTERESTS NOT IDENTICAL.—The judgment foreclosing the mechanics' liens could not affect the interests of unborn grandchildren where there is nothing in its language to comprehend them, and it does not appear that any interests foreclosed were identical with their interests so as to permit of virtual representation.

ID.—CONSENT OF MINORS TO DECREE NOT BINDING GRANDCHILDREN.—Where the minors were not held bound as owners of the property, but solely as having consented through their guardian to the decree, such consent could not bind the unborn grandchildren.

ID.—ACTION BY PURCHASER AT SALE TO QUIET TITLE—ABSENCE OF REPRESENTATION.—There being no transfer of the interests of the unborn grandchildren to the purchaser at the sale, in an action by him to quiet title against the husband and children, he having already acquired their interests in the property, he cannot represent the interests of the grandchildren therein.

ID.—COLLUSIVE SALE UNDER STREET SEWER ASSESSMENT—QUESTION OF FACT.—A sale under a street sewer assessment which the court found upon sufficient evidence was a collusive one to cure a defect in the title of one of the appellants, and initiate an adverse claim in favor of his wife, must be disregarded, the question being one of fact for the court.

APPEALS from a judgment of the Superior Court of Los Angeles County, and from orders denying a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

---

Waldo M. York, and John M. York, for E. H. Winans, Appellant.

Waldo M. York, and Haas, Garrett & Dunnigan, for Chas. A. Cole, Appellant.

Haas, Garrett & Dunnigan, for Margaret M. B. Anderson, Appellant.

Bernard Potter, for T. F. Joyce, Appellant.

Smith & Smith, for S. C. Joyce, Appellant.

J. D. Fredericks, District Attorney, and Hartley Shaw, Chief Deputy, for Plaintiff, Respondent.

Valentine & Newby, for Means and Hendricks, Respondents.

Davis & Rush, for Wannop & Forbush, Respondents.

Mott & Dillon, for Henry J. Pauly & Company, Respondents.

TAGGART, J.—This is a proceeding in eminent domain brought by the county of Los Angeles to acquire lands upon which to construct a hall of records. Interlocutory decree and final order or judgment of condemnation were entered in favor of plaintiff. By the former the court, besides finding the value of the premises condemned, ascertained and adjudged the rights of the respective defendants in the property and apportioned among them the sum decreed to represent the value of the property condemned.

Separate appeals were taken by each of the appellants Winans, Cole, Anderson and Joyce from the final judgment, from the interlocutory judgment, and from the orders denying their respective motions to vacate and set aside certain findings, and their motions for a new trial. No objection is made to the value of the property fixed by the court, but its apportionment among the various defendants is questioned.

On June 27, 1881, J. E. Hollenbeck, who was the owner in fee simple of all the lands affected by this proceeding,

executed a deed conveying said lands to Mrs. Emma Means "for and during the term of her natural life and upon her death to the heirs of her body"; the *habendum* clause of said deed reading: "To have and to hold, all and singular, the said premises, together with the appurtenances, unto the said party of the second party, for life, remainder to the heirs of her body." J. E. Hollenbeck died in the year 1885, leaving, as the sole executrix of his will and residuary devisee of his estate, his wife, Elizabeth Hollenbeck, who, after the regular distribution to her of said premises, and on the twenty-eighth day of June, 1887, made a deed of all her interest in said lands to said Emma Means. At the time of the making and delivery of the former deed there were living three children, heirs of the body of said Emma Means, to wit: Elfie O. Means, Claude E. Means and J. Worthington Means; two other children have since been born to her, as follows: Fairy A. Means (now Blee), about three years thereafter, and Juliet E. Means, born in the year 1890. The defendants Chester Kenneth Hendricks, Elizabeth Rosine Hendricks, James Bryan Hendricks, Merle Raymond Hendricks, Esther Georgia Hendricks and Clarence Donald Hendricks are grandchildren of said Emma Means and children of the defendant Elfie O. Hendricks (formerly Means); and the defendants Claude Edward Means and Dorothy Matele Means are also grandchildren of said Emma Means, being children of said defendant Claude E. Means.

The defendants who are appellants here claim to have succeeded to the title to various portions of said premises, together including the entire property, by sales thereof made in various proceedings to foreclose street assessments, mechanics' liens, etc., had in the superior court of Los Angeles county, and by virtue of certain decrees quieting their titles so acquired, made by the same court. The portions claimed by the appellants are respectively designated as follows: That of Winans as lot 4; that of Cole as lot 5; and that of Joyce as lot 6, all of the "Court House Block" in the city of Los Angeles. Lot 4 comprises the east half of the condemned lands; lot 5 the southwest quarter, and lot 6 the northwest quarter thereof.

The trial court found, in effect, as to each of the said appellants Winans, Cole and T. F. Joyce that he had acquired

all the right, estate and interest of Emma Means as life tenant and as successor to the estate of J. E. Hollenbeck, deceased, and of her children as remaindermen in and to the portion of the condemned property claimed by said appellant, but that he did not acquire the rights, interest or estate of the grandchildren of Emma Means in said premises. The finding in this respect as to the Hendricks grandchildren and lot 4 being as follows: "The defendants Hendricks, children of defendant Elfie O. Hendricks, have an interest in said lot four (4) contingent upon the death of their mother, Elfie O. Hendricks, during the lifetime of the said Mrs. Emma Means, and also contingent upon their surviving said Mrs. Emma Means; and upon the happening of said contingencies they, or the survivor or survivors of them, will be the owners of an interest and estate in fee in said lot four by virtue of said deed of J. E. Hollenbeck as heirs of the body of said Mrs. Emma Means, the extent of which cannot now be determined." Similar findings were made as to the other lots, and also as to all the lots, in favor of the other grandchildren, Claude Edward Means and Dorothy Matele Means, children of Claude E. Means. The appellant Anderson's interest is found to be that of mortgagee of the interest of appellant Cole in lot 5.

The appellants attack these findings (other than the last) and the conclusions of law drawn therefrom and the directions of the court as to the disposition of the funds in accordance therewith, and contend: (1) That the remainder created by the deed of J. E. Hollenbeck vested at once in the children of Emma Means, under the provisions of section 694 of the Civil Code; (2) That whether such remainder be regarded as vested or contingent, service of process upon and the appearance in the various proceedings by Mrs. Means, her children with the guardian of the latter, by application of the principle of virtual representation, operated to bind the interests of the grandchildren yet unborn; and (3) that certain of the proceedings were *in rem* and jurisdiction of the interests of the grandchildren was obtained by following the statutory method of bringing the property into court.

The proceedings in which it is claimed jurisdiction of the interests of the unborn grandchildren was thus acquired so as to estop or bar them from now claiming any interest in

the sum found to be the value of the property are as follows: In support of the titles of Cole and Winans (which may be considered together), the following judgment-rolls: (a) The rolls in actions Nos. 14,109 and 10,983 to foreclose street assessment liens against certain portions of said property, brought against Mrs. Emma R. Means, her husband J. W. Means, the defendants named herein who are children of Emma R. Means, and W. E. Rogers, who is the lessee of Mrs. Means, and also of the children under a proceeding in equity (No. 8,616) by their mother and guardian to obtain consent to the execution of a lease in their name; (b) that in an action to quiet title, No. 18,501, by Abbott, the successor in title of the purchasers at the sales made pursuant to the decrees in the above-mentioned foreclosure proceedings, against Mrs. Means, her husband and children; (c) that in an action, No. 21,002, brought by Winans against Abbott, trustee, etc., Mrs. Means, husband and children, to foreclose a mortgage on the portions of the premises now claimed by Winans and Cole; (d) that in an action to quiet title to the same premises, No. 24,146, by Gosch, the successor in title to the purchaser (McCollum) at the commissioner's sale made in execution of the decree in action No. 21,002, against four of the Means children, J. Worthington Means, Claude E. Means, Fairy A. Means and Juliet E. Means, minors; (e) and that in an action by the same plaintiff to quiet title (No. 28,196) against Mrs. Means, her husband and five children. Incidental to and explanatory of these proceedings, it is also necessary to consider the effect of the proceeding No. 8,616 above referred to, and of probate proceeding No. 5,874, of the lease of Mrs. Means and children to W. E. Rogers, and the deeds, mortgages and other instruments through which the parties to these respective actions and proceedings acquired the rights upon which such actions were based. These are as follows: Sheriff's deed in No. 14,109 to A. J. Mead, and deed of latter to R. W. Abbott; sheriff's deed in No. 10,983 to Stella M. Johnson; her deed to Charles A. Cole and the deed of the latter to R. W. Abbott; a declaration of trust by R. W. Abbott for the benefit of Emma Means and the heirs of her body; mortgage of Abbott, trustee, to Winans; a deed by Mrs. Means to Charles A. Cole; deed by Mrs.

13 Cal. App.—16

Means and her daughter Elfie O. to M. McCollum; deed by McCollum et ux. to C. H. Gosch, and the deed of Emma R. Means, Elfie O. Means and J. W. Means to C. H. Gosch.

In support of the contention of appellants Joyce (T. F. and S. A.) that the interests of the grandchildren in lot 6 were acquired by them, the following additional proceedings and matters are relied upon: The judgment-rolls in (f) a consolidated action to foreclose certain mechanics' liens on the building constructed by Rogers, lessee, under the lease above mentioned, No. 12,444, against Rogers, Mrs. Means, her husband and children; and (g) in an action to quiet title, No. 19,205, brought by Horace Hiller, who purchased the property at the sale under the decree foreclosing the mechanics' liens, against Mrs. Means, her husband individually and as guardian of the children, the five children and others whose names are not material here.

Under the code of this state the remainder granted to the heirs of the body of Emma Means by the deed of J. E. Hollenbeck was an interest which the remaindermen took by purchase, and not by inheritance (Civ. Code, sec. 779). It was a contingent interest, since it was future in character, and the person in whom, and the time of the happening of the event upon which it was limited to take effect, were both uncertain at the time of its creation. These uncertainties both continued to exist until after the various proceedings were had upon which appellants base their respective titles (sec. 695). It did not and could not become vested until the death of the life tenant, since she could have no "heirs" until her decease. In the interval all of her children might die, leaving the entire estate to the second generation, or the grandchildren. The interests of the latter are not void because of the improbability of the contingency on which they are limited to take effect (sec. 697). Neither can their interests be regarded as mere possibilities, such as the expectancy of an heir apparent (sec. 700), as they do not depend upon the law of succession to determine whether or not they will take effect, and they cannot be defeated by the testamentary or other act of the ancestor. It is also apparent that section 694 has no application here. That section is, in effect, the enactment into a statute of the rule laid down in Fearne on Contingent Remainders and Executory Devises:

"The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent." (Butler's 6th ed., p. 216.) This declaration should be read in connection with the language of Fearne which immediately follows it, to wit: "In short, upon a careful attention to this subject we shall find, that wherever the preceding estate is limited, so as to determine on an event which must certainly happen; and the remainder is so limited to a person *in esse*, and ascertained, that the preceding estate may, by any means, determine before the expiration of the estate limited in remainder, such remainder is vested. On the contrary, wherever the preceding estate is limited so as to determine only on an event which is uncertain, and may never happen; or wherever the remainder is limited to a person not *in esse* or not ascertained; or wherever it is limited so as to require the concurrence of some dubious uncertain event, independent of the determination of the preceding estate and duration of the estate limited in remainder, to give it a capacity of taking effect, then the remainder is contingent." (Page 217.)

In *Williamson* v. *Williamson*, 57 Ky. 329, 368, it was said of the rule distinguishing a contingent from a vested remainder, first above quoted from Fearne: "This principle, however general and universal it may be, has no application in a case like this, where the event which renders the possession vacant also resolves the contingency upon which the limitation depends, and makes that certain which was before uncertain. The possession becomes vacant by the death of the ancestor, and by the same event the persons who properly sustain the character of 'heirs' are ascertained and rendered certain. This rule, therefore, cannot operate as a test in a case like this, where the estate in remainder is given to the heirs of the same person who is devisee for life."

The remainder which we are considering is a future interest which will vest in those grandchildren of Mrs. Means whose father or mother, child of Mrs. Means, fails to survive the grandmother, and is an alternative contingent remainder under section 696 of the Civil Code. In some of its characteristics it resembles the "contingent remainder,

or alternative remainder in fee, with a double aspect," of the common law. Such estates usually arose where a remainder was limited to the issue of some person named and, upon failure of such issue before the death of the life tenant, to some other person in the alternative. Of the estates so created it is said they are both contingent fees limited merely as substitutes or alternatives one for the other, and not to interfere, but so that only one shall take effect; for instance, the fee of the grandchild in the case at bar being substituted in place of the fee of its father or mother if the latter should fail of effect by the grandmother surviving such father or mother. (Pingrey on Real Property, sec. 1008.) The one remainder is a substitute for, and not subsequent to, the other. Neither is, by its terms, to wait until the other shall have once taken effect and afterward been determined. (Washburn on Real Property, 6th ed., sec. 1575; Tiedeman on Real Property, sec. 415; Fearne on Contingent Remainders, 373; *Waddell* v. *Rattew*, 5 Rawle, 234.) They are not remainders expectant, the one to take effect after the other, but are contemporary. (*Luddington* v. *Kyme*, 1 Ld. Raym. 203, [91 Eng. Reprint, 1035].) The taking by the unborn remainderman is not a contingency dependent upon a contingency, but the same contingency which may happen several ways. (*Plunket* v. *Holmes*, T. Raym. 28, [83 Eng. Reprint, 17].)

The conclusion that the interests in remainder of the defendant grandchildren were and are contingent instead of vested does not preclude the application to them of the principle of virtual representation, if the proceedings in which such representation was exercised were such as to otherwise justify it. The rule as to virtual representation is stated broadly by the supreme court of the United States in *Miller* v. *Texas & Pacific R. R. Co.*, 132 U. S. 672, [10 Sup. Ct. Rep. 206], by recognizing the holding of Lord Redesdale in *Giffard* v. *Hort*, 1 Schoale & L. 386, as follows: "Where all the parties are brought before the court that can be brought before it, and the court acts on the property according to the rights that appear, without fraud, its decision must of necessity be final and conclusive. It has been repeatedly determined that if there be tenant for life, remainder to his first son in tail, remainder over, and he is brought before

the court *before he has issue,* the contingent remaindermen
are barred. Courts of equity have determined on grounds of
high expediency that it is sufficient to bring before the court
the first tenant in tail in being, and if there be no tenant in
tail in being, the first person entitled to the inheritance, and
if no such person, then the tenant for life." So, also, the
New York court in *Kent* v. *Church of St. Michael,* 136 N. Y.
10, [32 Am. St. Rep..693, 32 N. E. 704], uses the following
language: "Where an estate is vested in persons living, sub-
ject only to the contingency that persons may be born who
will have an interest therein, the living owners of the estate
for all purposes of any litigation in reference thereto, and
affecting the jurisdiction of the courts to deal with the same,
represent the whole estate, and stand, not only for them-
selves, but also for the persons unborn. This is a rule of
convenience, and almost of necessity. The rights of persons
unborn are sufficiently cared for if, when the estate shall be
sold under a regular and valid judgment, its proceeds take
its place and are secured in some way for such persons."
The rule is declared in Story's Equity Pleadings, section 144,
and its limitations considered in the sections following. (See,
also, *Finch* v. *Finch,* 2 Ves. Sr. 491, [28 Eng. Reprint, 316];
*Reynoldson* v. *Perkins,* Amb. 564, [27 Eng. Reprint, 362];
*Cockburn* v. *Thompson,* 16 Ves. Jr. 321, [33 Eng. Reprint,
1007]; *Harrison* v. *Wallton,* 95 Va. 721, [64 Am. St. Rep.
830, 30 S. E. 372, 41 L. R. A. 703]; *Hale* v. *Hale,* 146 Ill.
227, [33 N. E. 858, 867]; *McCampbell* v. *Mason,* 151 Ill.
500, [38 N. E. 675]; *Miller* v. *Foster,* 76 Tex. 479, [13 S.
W. 531]; *Hermann* v. *Parsons,* 117 Ky. 239, [78 S. W. 125];
*Dunham* v. *Doremus,* 55 N. J. Eq. 511, [37 Atl. 62]; *Gavin*
v. *Curtin,* 171 Ill. 640, [49 N. E. 523]; *Loring* v. *Hildreth,*
170 Mass. 328, [64 Am. St. Rep. 301, 49 N. E. 652].)

The rule and its reason are declared in *Sweet* v. *Parker,*
22 N. J. Eq. 455, as. follows: "Many exceptions exist to the
general rule that in equity all must be parties who have an
interest in the object of the suit. The reason or principle of
such exceptions is stated as follows in Calvert on Parties, sec-
tion 2, page 20: 'If they are required to be parties merely as
the owners and protectors of a certain *interest,* then the pro-
ceedings may take place with an equal prospect of justice if
that interest receives an effective protection from others. It

is the *interest* which the court is considering, and the owner merely as the guardian of that interest; if, then, some other persons are present, who, with reference to that interest, are equally certain to bring forward the entire merits of the question, the object is satisfied for which the presence of the actual owner would be so required, and the court may, without putting any right in jeopardy, take its usual course and make a complete decree.' " The rule is made applicable to representation of persons living, as well as those unborn, as in the case of an association whose members are numerous. (*Cockburn* v. *Thompson*, 16 Ves. Jr. 321, 326, [33 Eng. Reprint, 1007].) This principle is carried into our statutes by the provisions of section 388 of the Code of Civil Procedure, where the joint property of all may be bound by serving the summons upon one or more of a larger number of associates. Other statutory proceedings based thereon might be named. The doctrine is said by some of the cases to be applied only where the law regards the interest of the representative so identical with that of the person represented that motives of self-interest will induce the person acting as the representative to defend the property as his own. Other cases following the suggestion in Calvert on Parties urge in support of the rule the motives of affection where the representative of the unborn child is its parent; all, however, holding that all persons in being capable of appearing who are interested must be brought into court. The protection of a person whose property is brought into court by such representation is to be found in his right to attack the decree on the ground of fraud or collusion in its procurement. In the absence of such attack, the decree is final and conclusive as to the status of the property. (*Baylor* v. *Dejarnette*, 13 Gratt. 152; *Faulkner* v. *Davis*, 18 Gratt. 651, 690, [98 Am. Dec. 698].) These two cases have been more recently approved in the case of *Harrison* v. *Wallton*, 95 Va. 721, [64 Am. St. Rep. 830, 30 S. E. 372]. (See, also, *Ruggles* v. *Tyson*, 104 Wis. 500, [79 N. W. 766, 81 N. W. 367]; *Mayall* v. *Mayall*, 63 Minn. 511, [65 N. W. 942]; *Mathews* v. *Lightner*, 85 Minn. 333, [89 Am. St. Rep. 558, 88 N. W. 992]; *Gray* v. *Smith*, 76 Fed. 525, 532; *Arndt* v. *Griggs*, 134 U. S. 321, [10 Sup. Ct. Rep. 557].)

The application of the principle as here contended for is not a common one, and no decision by a court of this state so applying it has been called to our attention. The convenient use, which it served in extricating involved real estate titles at common law and in common-law jurisdiction, does not appeal with equal force to conditions existing under the code, although it is true, as said by some of the cases, that it is in accord with the trend of modern law toward making real property as readily transferable as is consistent with fair dealing and protection against fraud. That it tends to furnish some certain and convenient method of determining all unsettled questions respecting such titles, and that the well-being of every community requires the latter (*Arndt* v. *Griggs*, 134 U. S. 321, [10 Sup. Ct. Rep. 557]), is not alone sufficient to justify its indiscriminate adoption. So well have these matters been covered by statute that its application has become not only unusual, but generally unnecessary.

The better reasoned of the later cases hold that it can be relied upon in support of a judgment only as a matter of necessity and never merely as a matter of convenience. The form of the action is not controlling, but is, of course, to be considered in connection with the circumstances of the case. The necessity for relying upon some such principle to acquire jurisdiction of the interest in real property of persons unborn is apparent, "where the estate is sold under a regular and valid judgment, and the proceeds of sale take its place and are secured in some way for such persons" (*Kent* v. *Church of St. Michael*, 136 N. Y. 10, [32 Am. St. Rep. 693, 32 N. E. 704]), since this includes the caring for and preserving of the rights of the persons so represented; it is also readily apparent where the purpose of the suit in which such persons are said to be so represented is for the administration of a trust estate by a court of equity so as to protect the interests of the unborn, as well as those who are in being, against the danger of destruction by tax and other liens which affect the entire title (*Ruggles* v. *Tyson*, 104 Wis. 500, [79 N. W. 766, 81 N. W. 367]); or in a case such as the one at bar where the property is necessary for a public use and the court can by decree protect the interests of the party said to be so represented. So where a trust is created

without a power of sale and it is necessary for the preservation of the trust estate that it be sold, this principle is properly invoked to acquire jurisdiction of the persons not in being. (*Mayall* v. *Mayall*, 63 Minn. 511, [65 N. W. 942].) It is more difficult, however, to follow the reasoning underlying these decisions into those cases in which it has been held that, where a mortgagor after making the mortgage conveys the mortgaged property upon such conditions as to create an interest therein in unborn persons, a foreclosure suit brought by the mortgagee against all interested persons living, or all the parties that could be brought before the court, enables a court of equity to enter a decree barring the equity of redemption of the persons not *in esse*. (*Sweet* v. *Parker*, 22 N. J. Eq. 455; *Nodine* v. *Greenfield*, 7 Paige, 544, [34 Am. Dec. 363].) In these cases, however, the interest of the unborn person, who is so represented, is such only as his grantor had in the property at the time the deed was made, that is, whatever would be left after the debt secured by the mortgage had been paid. So, also, in cases in which the judgment has been adverse, thus absorbing the entire estate of both the living and those not *in esse*, it is not easy, at first sight, to see how it can be said that anything is being done to preserve or protect the interest of the unborn. In such cases, as in those first mentioned, the living remainderman is called upon to protect such an estate as he and the other party has, and if the result of the decree of the court be to declare there is no estate, or that such as there is should be applied to the payment of the liens which exist against it, the representative has done all that the represented could have done had he been present. If the sole purpose of the appearance of a living remainderman in an action were to secure some advantage to himself, or merely to serve the convenience of the party whose title was being quieted against the unborn remaindermen, virtual representation could not be presumed to exist, and any judgment obtained by virtue of such pretended representation could be set aside on the ground of fraud or collusion when the unborn remainderman became capable of suing in his own right. Where, however, he has the same interests to preserve in the property that the unborn person would have if he were present, and his acts in connection therewith are such that, from the advantage to

the person not *in esse*, it can be assumed the latter will adopt them, the acts of the living remainderman in protecting the property against attack may be said to come within the reason of the rule. The interests of representative and represented must, however, be so identical that the motive and inducement to protect and preserve may be assumed to be the same in each.

Considering the effect of this doctrine upon the various judgment-rolls and documents hereinabove mentioned, we are of opinion that the proceedings under the street improvement act of 1885, as the statute read at the time when the foreclosures in actions Nos. 10,983 and 14,109 were decreed, were intended to subject to the lien created by the law the entire title of the property affected thereby. As was said in *Gillis* v. *Cleveland*, 87 Cal. 217, [25 Pac. 351]: "Thus it appears that the expense of the improvement is a charge upon the property benefited, and not a charge against the owner personally, in furtherance of this end, the identity of the lot assessed, and not the person who may be the owner, is made the essential requirement of the statute; the first must be specifically described, while the latter may be designated as 'unknown,' as in the present case. Nowhere in the statute does any intention appear to charge the owner personally." But section 12 of the act also provides that the contractor may sue "the owner of the land, lots or portions of lots"; that the suit must be brought in the superior court within whose jurisdiction the work was done, service in such actions to be had in such manner as is prescribed in the codes and laws of this state; and that, "The court in which said suit shall be commenced shall have power to adjudge and decree a lien against the premises assessed, and to order such premises to be sold on execution, as in other cases of the sale of real estate by the process of said courts." (Stats. 1889, p. 168.) It was also said in *Page* v. *Chase,* 145 Cal. 578, 583, [79 Pac. 278]: "In this state the legislature has authorized its enforcement by means of a suit in equity against the 'owner' of the land; and in section 16 of the Street Improvement Act (Stats. 1885, p. 159), the 'owner' is defined to be, for the purposes of that act, 'the person owning the fee, or in whom appears the legal title to the land by deeds duly recorded in the county recorder's office of the county.' There

is no provision that the land shall be made the defendant in such action, or that service of process shall be made upon it. . . . It would not be contended that (because the assessment was made to an unknown owner), the contractor could select any person he might choose as the defendant in his action and bind the land by the judgment therein, as against its actual owner, as defined in section 16." The quotation from section 16 by the court in this opinion was no doubt sufficient for the purposes of that case, but it omits a portion of the definition important here, that is, the provision which makes the executor administrator or guardian of the "owner," and persons in possession under claim, or exercising acts of ownership over the same also "owners" for the purpose of the law. The statute itself thus recognizes a constructive or virtual representation as sufficient to give the court jurisdiction of the property in the equitable action to foreclose the lien provided for, even though the proceeding be held not to be one *in rem,* for the reason that the *res* is not made a defendant.

If the view expressed in *Page* v. *Chase,* 145 Cal. 578, 583, [79 Pac. 278], that a judgment for the sale of the property in such a proceeding will not bind the entire world, or affect the interests in the property of any owner not made a party defendant to the action, be accepted, this does not prevent the application of the rule of virtual representation. If the proceeding were strictly *in rem,* there would be no necessity to invoke any principle of representation except the one that the property in court represents all its owners and claimants. It is not necessary that a suit in equity be strictly *in rem* to subject the entire property to the payment of the debt. All interests in the property are constructively or virtually before the court when the service is made in accordance with the statute, whether this be upon the person or the thing. A decree in equity may be made effective as to all persons interested in the property to the value thereof in the same manner that the law makes a judgment against an estate a judgment *in personam* against the administrator, which is enforceable only to the extent or value of the estate held by him. Decrees in equity are frequently made effective in this way and the property is as effectually bound as if it were attached or seized or made the defendant in the

action. (*Richards* v. *Blaisdell,* 12 Cal. App. 101, [106 Pac. 732]; *Stacy* v. *Thrasher,* 6 How. 44, 61; *Heidritter* v. *Oil-Cloth Co.,* 112 U. S. 294, [5 Sup. Ct. Rep. 135].)

The acquiring of jurisdiction of the interests of the grandchildren by these proceedings did not effectually vest these interests in the purchasers at the sales made under the respective decrees, because of the respective agreements made by them with Mrs. Means and with each other, and which became merged in and were succeeded by the declaration of trust by R. W. Abbott for the benefit of Emma R. Means and the heirs of her body. None of the subsequent proceedings or steps taken released the successors in title of Abbott from the trust obligation to hold for the benefit of the unborn remaindermen. The action to quiet title by Abbott (No. 18,501) resulted in the making of the declaration of trust by him for the benefit of Mrs. Means and "the heirs of her body." The mortgage of Abbott to Winans was executed by the former under and by virtue of a contract with Mrs. Means and was to secure obligations primarily imposed upon her as life tenant of the property. The most favorable view for appellants that can be taken of this transaction is that the amount named in the mortgage was the sum found necessary to prevent the sale of the entire property under the street foreclosure proceedings, and, the transaction being for the preservation of their estate, the interests of the unborn remaindermen were bound by the decree in the action (No. 21,002) to foreclose the mortgage. While of opinion that the case before us is to be distinguished from those cited by appellants in this connection (*Sweet* v. *Parker,* 22 N. J. Eq. 455; *Nodine* v. *Greenfield,* 7 Paige, 544, [34 Am. Dec. 363], and English cases), we regard this as unnecessary, because, as in the case of the street assessments, the purchaser at the sale (M. McCollum) entered into an agreement whereby he became only the legal holder of the title with the equitable rights of the remaindermen in the property fully acknowledged. He, like the previous purchasers of the property, was bound to know that he was dealing with the life tenant, who might be protecting her own holding at the expense of the remaindermen, and yet whose efforts to protect the property, and all agreements made by her having this effect, must redound to the advantage of the remaindermen.

In the first action to quiet title by Gosch (No. 24,146), Mrs. Means and her daughter Elfie O. Means were not made parties defendant, they having prior to that time conveyed the property to McCollum by a grant deed, and Gosch having succeeded to McCollum's interests therein. So also, as above stated, subsequent to the conveyance by McCollum to Gosch and prior to the commencement of the second action to quiet title (No. 28,196), Mrs. Means, her husband and her daughter made a quitclaim deed of said premises to Gosch. By the making of the grant deed the interests of Mrs. Means and her daughter Elfie became hostile to that of the other "heirs of her body." Their legal obligation to protect the title of their grantee rendered them incompetent to represent the others in the manner in which they had theretofore done. It could no longer be said that there was an identity of interest and motive between them and the other contingent remaindermen. Their appearance no longer operated to give jurisdiction of the others to the court. The plaintiff had succeeded to the interests of Mrs. Means and her daughter in the property, and being himself hostile he could not appear for the contingent remaindermen, although he had acquired the interests of one of them. The first action being by the vendee of the life tenant for the purpose of destroying the remainder, and the second by the successor of the life tenant and one of the contingent remaindermen for the same purpose, the doctrine of virtual representation could not be applied. It is apparent, then, that in neither of these actions was jurisdiction of the grandchildren acquired upon this theory. The special reasons stated distinguish this case from those cited bearing upon the application of the doctrine to actions to quiet title.

Without applying the principle of virtual representation, we know of no theory upon which the court can be said to have acquired jurisdiction of the interests of the grandchildren, who were not parties thereto, in these actions to quiet title. The proceeding authorized by section 738 of the Code of Civil Procedure may be broader in some respects than the suit in equity called by the same name, but it does not authorize the adjudication of the right, claim, interest, or title of anyone not before the court. In terms it says: "An action may be brought by any person *against another* who claims

an estate or interest in real property, adverse to him, for the purpose of determining such adverse claim,'' etc.   Where the service of summons is made constructively under the code, the proceeding becomes to a certain extent one *in rem*, but the decree entered in such a case cannot adjudge the rights of any person not included in the constructive service, any more than it can do so where the persons named in the summons have been personally served within the state.   In case of either personal or constructive service, only the interests of the persons served and of those whom they expressly or virtually represent are affected by the decree.   The only proceeding purely *in rem* given by the statutes of this state for the determination of the rights in real property of persons whose interests are unknown, to which our attention has been called, is that provided by sections 749, 750 and 751 of the Code of Civil Procedure.

An examination of proceeding No. 8616, relied upon by appellant Joyce, is important on this appeal only for the purpose of determining whether the interests of the unborn contingent remaindermen were so connected with the lease of Rogers as to be affected by the judgment foreclosing the mechanic's lien in suit No. 12,444.   The duty of paying the taxes and street assessments (actions Nos. 10,983 and 14,109 above), by reason of the nonpayment of which the property was about to be lost, rested primarily upon the life tenant, Mrs. Means.   She was entitled to the possession and might lease the property at her pleasure for any term, subject only to the limitations of her own estate, but there were no grounds upon which she could ask a court of equity to preserve her estate at the expense of that of the remaindermen.   So far as she was concerned, this was the only purpose served by proceeding No. 8616.   As the application of Mrs. Emma Means, life tenant, it failed to set forth any cause for relief, and in her capacity of mother Mrs. Means was not authorized to sue, as her husband J. W. Means was the regularly appointed general guardian of the children who were living.   The husband was the appointee of the probate court (No. 5874), and if the authority or consent of any court were necessary in order that he might make a lease of his wards' property, application should have been made to the court to which he owed his appointment.   He could not go into a court of equity

and procure this authority. No power is given to the guardian to subject an interest in the real estate of his ward to the maintenance or support of the latter (Code Civ. Proc., secs. 1768, 1770), or to change the form of such an investment (sec. 1792) without an order of court. There was no special procedure for this purpose provided by the code at the time application No. 8616 was made to the superior court; nevertheless, we are of opinion that proceeding No. 8616 did not affect the interests of the minors because not addressed to the probate side of the court in No. 5874. That the guardian cannot bind the property of his ward by a contract without an order of court is well settled in this state. (*Guy* v. *Du Uprey,* 16 Cal. 195, [76 Am. Dec. 518]; *Morse* v. *Hinckley,* 124 Cal. 154, [56 Pac. 896].) As he cannot make such a contract, so an attempt on his part to do this cannot result in giving to the party with whom he has contracted the right to a lien for labor done or materials furnished under the contract. (*Fish* v. *McCarthy,* 96 Cal. 484, [31 Am. St. Rep. 237, 31 Pac. 529]; *San Francisco Paving Co.* v. *Fairfield,* 134 Cal. 220, 224, [66 Pac. 255].) If the guardian could not by his direct act impose a lien upon the interests of his ward, it could not be done indirectly by the lessee of the life tenant. If the question whether the minor children of Mrs. Means were required to give the notice provided by section 1192, or have the lien foreclosed in action No. 12,444 imposed upon their interests in the property, had to be here decided, we should be inclined to accept the view that they were not. (James on Mechanics' Liens, sec. 105, p. 114.) The attack upon the sufficiency of the judgment in that action, however, is a collateral one, and it appears from the findings·therein that the court found that these minors were the owners of the property and ''that all of the material furnished and labor performed by any or all of the plaintiffs was furnished and performed with the knowledge and consent of the owners of the real estate described in the complaints.'' The guardianship of the father is also found, and in support of the judgment we are bound to presume this finding of knowledge and consent meant such consent as would sustain the decree. The complaint sufficiently alleges such ownership and consent, and the authority of the guard-

ian to consent, to sustain the findings mentioned. (*Collins* v. *O'Laverty,* 136 Cal. 31, [68 Pac. 327].)

The language of the judgment, however, does not comprehend by name or description among those whose claims to the property and equity of redemption are barred and foreclosed any of the grandchildren contingent remaindermen. Neither do we think, under the principle of virtual representation hereinabove applied in the proceedings to foreclose street assessment liens, they were brought within the jurisdiction of the court in proceeding No. 12,444. It does not appear upon the face of the judgment-roll in that action that the interests of the persons appearing and contesting the lien were identical with that of the unborn remaindermen. Indeed, it appears from the findings in the case, including those last above considered, that the liens foreclosed were created by the act of the lessee of the life tenant under a contract with her, and that her interest alone was chargeable. The minors who were before the court were not held bound because they were owners who failed to give the notice under section 1192, but because of their consent to the judgment against them. They could not bind the grandchildren in this way. Accepting the rule laid down in the decision of Justice Matthews of the United States supreme court in *Heidritter* v. *Elizabeth Oil-Cloth Co.,* 122 U. S. 294, 301, [5 Sup. Ct. Rep. 135], that the proceeding to foreclose a mechanic's lien is "in its essential nature" *in rem,* we find nothing therein to warrant us in holding that any transfer of the title of the unborn remaindermen was made to Hiller by virtue of the deed to him as purchaser at the sale made in execution of the judgment. This was not a proceeding whereby the property alone is made defendant in the action and the world foreclosed. The owner must be made a party to such an action if his property is to be made chargeable with the claim for which the lien is given.

When action No. 19,205 to quiet title was brought by Hiller against Mrs. Means, her husband and children, and others, he had already acquired the interests of Mrs. Means and her children in the property the title of which he sought to quiet, and these persons could not be brought into court solely to represent the interests of the grandchildren. The issue raised by the answer of the children who appeared in the action

related to a charge of fraud upon the part of their father and mother in consenting to the former judgment (No. 12,444) on their behalf, but upon this issue the court found against them. This was not an issue affecting the interests of the grandchildren, and it cannot be said that the living remaindermen represented the interests of the unborn in presenting the matter.

The claim of title of S. A. Joyce to lot 6, the same property claimed by T. F. Joyce, is based upon a sale pursuant to the foreclosure of a street sewer assessment and a deed to her from the board of public works of the city of Los Angeles, dated July 1, 1908. This sale the court found to be a collusive effort of T. F. Joyce to cure the defect in his title by refusing to meet his obligations as successor of the life tenant and as a coremainderman, and to thus initiate an adverse holding in the lot by causing the same to be brought in by his wife S. A. Joyce. The question here was one of fact, and we are of opinion that there is evidence to sustain the finding of the court.

We do not think it necessary to consider the question of which appeal properly presents the matter to the court. Suffice it that the cause is before us on its merits in either view.

The findings of the court holding that the contingent interests of the grandchildren of Mrs. Means acquired by the Hollenbeck deed did not pass to appellants find support in the evidence, and the disposition of the proceeds of the judgment made in accordance therewith properly apply the law, and, therefore, the judgment and orders appealed from are affirmed.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 13, 1910.